JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Benjamin Dixon ("Dixon") appeals from the decision of the Cuyahoga County Court of Common Pleas which found him guilty of assault on a police officer in violation of R.C.2903.13.
 {¶ 2} Dixon's trial commenced on March 17, 2003. Dixon appeared before the trial court and acknowledged the written jury trial waiver. He had signed the waiver prior to the commencement of trial. The court questioned Dixon regarding his waiver of rights and determined that his waiver was made knowingly, intelligently and voluntarily. The written waiver was filed with the clerk prior to the commencement of trial.
 {¶ 3} At trial, the following facts were presented:
 {¶ 4} Dixon entered the Rollerdome skating rink on May 11, 2002. Officer Michael Knack ("Knack") was in uniform and working part-time security at the rink that same evening. He had worked at that location for nearly six years without incident. An employee of the rink saw Dixon sitting at a table without roller skates on and wearing his street shoes. The rink requires all patrons to wear roller skates even if they do not intend to skate. Knack informed Dixon of this requirement and asked him to leave. Dixon responded with profanity. Knack told Dixon that if he did not leave, he would be arrested.
 {¶ 5} As Dixon stood up, he walked past Knack hitting him with his shoulder. Knack told Dixon that if he did that again, he would be arrested. Dixon turned toward Knack, yelled a profane term, and lifted his shoulders and clenched his fists in preparation for a fight as he walked toward Knack.
 {¶ 6} Knack grabbed Dixon to escort him to the exit. Dixon began to push Knack backwards and Knack grabbed Dixon's hands. Dixon grabbed Knack's shirt and began grappling with him. Knack put Dixon in a headlock and began walking him backward toward the exit door. Dixon was flailing and continuing to grapple with Knack. To avoid losing control of Dixon, Knack leaned his body onto Dixon's, forcing Dixon to the ground.
 {¶ 7} While on the ground, Dixon was continually swearing, struggling and making threats. Knack radioed for assistance, which soon arrived. Dixon was handcuffed and brought to his feet. For weeks thereafter, Knack was in constant pain from what was later determined to be a broken rib he had suffered during the struggle with Dixon.
 {¶ 8} Dixon advances four assignments of error for our review. Dixon's first assignment of error states as follows: "Mr. Dixon was denied due process of law when the trial court decided this case under the misapprehension that Mr. Dixon was legally presumed to intend the natural and probable consequences of his actions."
 {¶ 9} Dixon was convicted of assault pursuant to R.C. 2903.13
which reads in pertinent part:
 {¶ 10} "(A) No person shall knowingly cause or attempt to cause physical harm to another. * * *
 {¶ 11} "(C) Whoever violates this section is guilty of assault." (Emphasis added.)
 {¶ 12} R.C. 2901.22(B) defines the culpable mental state of "knowingly" as follows:
 {¶ 13} "(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 14} Specifically, Dixon cites the following comment by the trial court as evidence the court applied the law incorrectly. "* * * [O]ne must be presumed to have intended the logical and natural consequences [of their conduct]." However, this comment is part of a broader statement that is captured in this full quote:
"Defense counsel has made much of the assertion that Mr. Dixondid not intend to cause injury, that there was no knowledge thathis act was likely to cause the — substantially likely, morelikely than not, to cause serious physical harm.
 "And I have been reviewing the annotations and the case lawand have not seen any law that specifically addresses thisparticular point.
 "And I note that nobody has presented any case law from Ohioor anywhere else as to that point.
 "I think, however, when somebody initiates a course of conductintentionally, which escalates the tension and likelihood ofviolence, that one must be presumed to have intended the logicaland natural consequences of that, which in this case involved thefact that Officer Knack received physical harm."
 {¶ 15} In this context, this statement is not a misapprehension of the law, but a statement that captures the meaning of "knowingly" in R.C. 2901.22(B). Regardless of Dixon's intentions, he acted knowingly (i.e., he is presumed to have known the result of his conduct) because he initiated a course of conduct which increased the likelihood of violence and injury.
 {¶ 16} "`Knowingly' does not require the offender to have the specific intent to cause a certain result. That is the definition of `purposely.' Instead, whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." State v. Huff (2001), 145 Ohio App.3d 555. "The test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria. * * * However, if a given result is probable, a person will be held to have acted knowingly to achieve it because one is charged by the law with knowledge of the reasonable and probable consequences of his own acts." State v. McDaniel (May 1, 1998), Montgomery App. No. 16221. The trial court's statement is merely a restatement, using other words, of the "charge by the law" that Dixon's knowledge of the probable consequences of his actions can be inferred by the "surrounding facts and circumstances."
 {¶ 17} Dixon cites Sandstrom v. Montana (1979),442 U.S. 510, in support for his claim that the trial court's statement excerpted above constitutes reversible error. In Sandstrom, the court found error with a jury instruction that "the law presumes that a person intends the ordinary consequences of his voluntary acts." In this matter, tried to the bench, there were no jury instructions. In addition, the trial court's statement did not imply that "the law" presumes Dixon intended the consequences of his acts, but merely that given all the facts and circumstances of the case, the trial court, as fact finder, made that presumption. We note that the trial court's use of "intended" here could create confusion; however, the meaning of the trial court's words both here and in other portions of the record clearly demonstrate the application of the culpable mental state of "knowingly" as appropriate under the statute.
 {¶ 18} Dixon also cites State v. McGee (1997),79 Ohio St.3d 193, a bench trial case where the trial court improperly believed negligence was sufficient to establish the mens rea for child endangerment. Again, McGee, like Sandstrom, was decided on the basis of an error involving a legal standard and not a factual determination as was done in this case. For these reasons, this assignment of error is overruled.
 {¶ 19} Dixon's second assignment of error is as follows:
 {¶ 20} "The verdict was not supported by sufficient evidence."
 {¶ 21} In State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, the Ohio Supreme Court held that "an appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 22} Dixon argues that the trial court's finding that he acted "knowingly" in injuring Knack's rib is not supported by the evidence. We disagree.
 {¶ 23} The state presented evidence, through the testimony of Knack and other witnesses at the roller rink, that Dixon initiated the physical altercation through the shoulder hit and refusal to comply with Knack's instructions to leave the building.
 {¶ 24} Knack's rib was injured while he was attempting to subdue Dixon by forcing him to the ground. Dixon views this as making it impossible that Dixon could have knowingly caused this injury to Knack. Dixon's parsing misses the point. The point in time to determine the knowing nature of Dixon's acts is when he decided between complying with Knack's instruction to leave the building or staying to fight. Dixon voluntarily and knowingly chose to engage in the physical altercation with Knack. Once he did so, the court was entitled to find that he was aware that his conduct would probably cause a certain result (i.e., injury to Knack). The law does not require the state to prove that Dixon knew he would cause any specific injury to Knack. We find that the testimony presented by the state, if believed, was sufficient to permit any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt. This assignment of error is overruled.
 {¶ 25} Dixon's third assignment of error is as follows:
 {¶ 26} "The verdict was against the manifest weight of the evidence."
 {¶ 27} State v. Martin (1983), 20 Ohio App.3d 172, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated: "There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence. Here, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [fact finder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. The power to reverse a judgment of conviction as against the manifest weight must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction. Id.
 {¶ 28} In determining whether a judgment of conviction is against the manifest weight of the evidence, this court in Statev. Wilson (June 9, 1994), Cuyahoga App. Nos. 64442/64443, adopted the guidelines set forth in State v. Mattison (1985),23 Ohio App.3d 10, syllabus. These factors, which this court noted are in no way exhaustive, include: "1) Knowledge that even a reviewing court is not required to accept the incredible as true; 2) Whether evidence is uncontradicted; 3) Whether a witness was impeached; 4) Attention to what was not proved; 5) The certainty of the evidence; 6) The reliability of the evidence; 7) The extent to which a witness may have a personal interest to advance or defend their testimony; and 8) The extent to which the evidence is vague, uncertain, conflicting or fragmentary." Id.
 {¶ 29} The pertinent evidence of this matter was previously reviewed above. Dixon is again arguing that he could not have knowingly injured Knack because Knack's injury resulted from Knack's forcing Dixon to the ground. We have addressed the logic of this argument in assignment of error number two.
 {¶ 30} The trial court was not required to accept Dixon's claim that Knack was the aggressor or that Dixon "accidentally brushed against" Knack. The state's eyewitnesses all gave consistent accounts of what happened. The trial court was entitled to believe some, all, or none of each witness's testimony. Its verdict indicates the trial court believed the state's witnesses and disbelieved Dixon's claims of accidentally bumping Knack and Knack being the aggressor.
 {¶ 31} Considering the entire record, we cannot say the trial court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. This assignment of error is overruled.
 {¶ 32} Dixon's fourth assignment of error is as follows:
 {¶ 33} "The trial court was without jurisdiction to conduct a bench trial because the requirements of R.C. 2945.05 were not strictly followed."
 {¶ 34} R.C. 2945.05 reads in pertinent part:
 {¶ 35} "In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury. Such waiver by a defendant, shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof * * *."
 {¶ 36} Trial courts are required to strictly comply with R.C.2945.05. State v. Pless (1996), 74 Ohio St.3d 333.
 {¶ 37} Dixon's trial began on March 17, 2003. A jury waiver signed by Dixon was filed with the clerk of court on March 17, 2003. Dixon argues that the trial court failed to strictly comply with R.C. 2945.05 in two ways. First, the written waiver was signed by Dixon; however, it was not done so in "open court." Second, the trial court's journal entry setting forth that the written waiver was filed with the clerk was, itself, not filed until after the trial had ended. Dixon argues that even though the jury waiver was filed on March 17, 2003, it was not made "part of the record" until the trial court's subsequent journal entry was filed, which occurred after the trial concluded.
 {¶ 38} The issue raised by Dixon's first argument was addressed in State v. Walker (1993), 90 Ohio App.3d 352 as follows: "We do not take the statute to mean, as urged by appellant, that the written waiver must be actually signed in open court, as long as the signed writing has been made a part of the record and the waiver is reaffirmed in open court. The record in this case clearly reflects that both procedural requirements were satisfied. Therefore, finding that appellant voluntarily made a knowing and intelligent waiver of a jury trial, the court found that the requirements of R.C. 2945.05 were satisfied." The same analysis applies to Dixon's argument here. Dixon's written jury waiver was reaffirmed in open court and was made part of the record. Accordingly, the procedural requirement was met. SeeState v. Carothers, Cuyahoga, App. No. 82860, 2004-Ohio-51.
 {¶ 39} As to Dixon's second point, the Ohio Supreme Court has spoken directly to this issue as well. "[W]e have definitively determined that the requirement in R.C. 2945.05 that a jury waiver form must be `filed in said cause and made a part of the record thereof' means that the form must be time-stamped and included in the record." State v. Gipson (1997),80 Ohio St.3d 626. Dixon's written jury waiver was, in fact, time-filed with a time-stamp of March 17, 2003. R.C. 2945.05, on its face, does not require the court's filing of a journal entry "setting forth that the written waiver was filed" prior to the trial commencing. As we have previously held, "Strict compliance with R.C. 2945.05 is met upon filing the jury waiver; there is no rule pertaining to when the filing must occur." State v. Carothers, supra, quotingState v. Thomas, Cuyahoga App. No. 82130, 2003-Ohio-6157. This assignment of error is overruled.
 {¶ 40} The judgment is affirmed.
Judgment affirmed.
 Karpinski, P.J., and Calabrese, Jr., J., concur.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.