OPINION
{¶ 1} Defendant-appellant, Sheryl Sorrells-Johnson, appeals from a judgment of the Franklin County Court of Common Pleas finding her guilty of assault. Because *Page 2 
sufficient evidence and the manifest weight of the evidence support the trial court's judgment, we affirm.
 {¶ 2} By indictment filed April 25, 2006, defendant was charged with one count of assault on a peace officer in violation of R.C. 2903.13, a felony of the fourth degree. Arising out of a February 9, 2006 incident at the Kroger store on Refugee Road, the indictment alleged defendant knowingly caused or attempted to cause physical harm to a Columbus peace officer in the performance of his official duties.
 {¶ 3} On the scheduled trial date, defendant waived a jury trial. The matter was tried to the trial court, and the court found defendant guilty. The trial court sentenced defendant to 12 months in the Ohio Department of Rehabilitation and Correction, but suspended it for three years of community control, including conditions that require defendant to maintain employment and to attend anger management classes.
 {¶ 4} Defendant appeals, assigning two errors:
 First Assignment of Error: The verdict is not supported by sufficient evidence.
 Second Assignment of Error: Appellant's assault conviction was against the manifest weight of the evidence.
 {¶ 5} Because defendant's two assignments of error are interrelated, we address them jointly. In them, defendant contends neither sufficient evidence nor the manifest weight of the evidence supports her conviction. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Thompkins (1997),78 Ohio St.3d 380, 386. Sufficiency is a test of adequacy. Id. We construe the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have *Page 3 
found the essential elements of the offense proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus; State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387.
 {¶ 6} When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict to permit reasonable minds to find guilt beyond a reasonable doubt.Conley, supra; Thompkins, at 387 (noting that "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony"). Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The jury thus may take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part or none of a witness's testimony."State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill (1964), 176 Ohio St. 61, 67.
 {¶ 7} According to the state's evidence, Pamela Perry was working at 8:30 a.m. on February 9, 2006 at the Kroger store located at 4485 Refugee Road. As Perry was putting bread on a bread table, a customer, later identified as defendant, ran into a Valentine's Day cookie display and knocked cookies off of it. Although Perry told her "[i]t's okay, ma'am. I'll pick them up," defendant responded that "[i]t shouldn't be there. That it wasn't F'ing secure anyway." (Tr. 6, 7.) Defendant then proceeded down into the produce *Page 4 
area, calling Perry a "F'ing bitch" and stating "that she was going to kick [Perry's] ass." (Tr. 8.)
 {¶ 8} Perry went to one of the store managers about the confrontation with defendant. Officer Anthony Roberts, a Columbus police officer who was working special duty at the store, then became involved in the situation. Perry explained to Roberts that she had a confrontation with the customer, and the customer threatened to bodily harm her. Perry advised Roberts the perpetrator was still in the store. When Roberts and Perry located defendant at the back of the store, Roberts asked her if she was involved in a confrontation with one of the employees. Defendant, who was angry, stated she did threaten to kick Perry's "ass." (Tr. 49.) Roberts advised her she would have to leave the store. Defendant responded she would leave when she was ready to leave. Roberts explained defendant had to leave then.
 {¶ 9} When defendant refused to leave, Roberts attempted to physically escort her out of the store by grabbing her arm with both hands and trying to walk her down the aisle toward the exit. At that point, defendant became more agitated and yelled at Perry that defendant was "going to kick [Perry's] ass." (Tr. 51.) Because defendant uttered the threats in Roberts' presence, he decided to place defendant under arrest for menacing a third party in the presence of a police officer.
 {¶ 10} At that point, defendant became physically aggressive and, while pulling away, swung at Roberts with an open hand. Because of her actions, Roberts decided to "take her to the ground" and put handcuffs on her. (Tr. 52.) According to Roberts, defendant at some point "started kicking and scratching, causing a scratch across the *Page 5 
right side of [Roberts'] face." Id. Because he felt disadvantaged on the ground with her, Roberts broke away from her, stood up, and deployed his mace on defendant. The mace had very little effect, so he waited and deployed it a second time. He then was able to cuff one of defendant's wrists and, with the assistance of another Kroger employee, cuffed the other wrist. Once fully cuffed, defendant fell to the ground. Although Roberts instructed her to get up, she refused. He tried to pick her up, but she was unwilling to get up on her feet. As a result, Roberts "was forced to pull her down the aisle until other officers responded to assist * * * in hopes of trying to get her out of the store." (Tr. 53.)
 {¶ 11} By contrast, defendant testified she had an encounter with Perry when defendant knocked over two packages of cookies on the display where the employee was working. The employee was upset and, although defendant apologized for knocking over the display, told defendant to pick them up. An exchange of words ensued, and then defendant went on shopping.
 {¶ 12} Defendant explained that while she was finishing her shopping, Roberts came up to her and said to "[l]eave the store immediately." (Tr. 72.) Roberts was angry, and when defendant inquired why she was to leave, he told her that Perry "said you threatened her." (Tr. 73.) Defendant responded, "I should have threatened you, you fat bitch." Id.
 {¶ 13} According to defendant, Roberts ordered her to exit the store. Defendant grabbed her purse to leave, but Roberts told her she was "under arrest." (Tr. 75.) Roberts then immediately touched the back of defendant's shoulders and pushed her down. The next thing defendant knew, they were on the floor. Roberts cuffed one of her arms and *Page 6 
"he went through my skin. I fractured my hand, and I'm screaming at this time to please loosen it. And he sprays Mace on me while I'm on the floor in my eyes." (Tr. 76.) Contrary to Roberts' testimony, defendant testified that she "begged for [Roberts] to let [her] walk" out of the store, but Roberts refused. (Tr. 78.) According to defendant, she was screaming to him to let her stand, as she was choking "to death" while he dragged her by the hood of her jacket. (Tr. 79.)
 {¶ 14} Although defendant admits they were tussling, defendant initially denied ever swinging at or kicking Roberts; subsequently, she admitted she swung her legs. When asked whether she scratched his face, she replied, "[n]ot that I know of." (Tr. 77.)
 {¶ 15} R.C. 2913.03(A) proscribes assault, stating "no person shall knowingly cause or attempt to cause physical harm to another." According to R.C. 2901.22(B), "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 16} Premised on those definitions, defendant contends she did not knowingly cause any harm to Roberts as a result of their encounter at the Kroger store. In support, defendant relies not only on the evidence, but on the trial court's explanation of its guilty verdict. The court stated that "in weighing the evidence, I believe that she did intentionally cause an offensive contact with the officer. I don't think she intended to injure him. I don't think she did injure him. But, nonetheless, it is an assault. And so technically she's guilty of assault." (Tr. 85.) *Page 7 
 {¶ 17} The trial court was presented with evidence that defendant was both swinging and kicking at Roberts. While the evidence also may have indicated defendant did not intend to injure the officer with her actions, the issue of whether defendant acted knowingly is not resolved on that basis. Rather, the question is whether she was aware that her actions probably would cause the prohibited conduct. Construing the evidence in favor of the state, we cannot say the trial court erred in concluding defendant was aware that the probable consequence of her swinging and kicking at Roberts was to harm him, or at least to attempt to harm him.
 {¶ 18} As the court explained in State v. Dixon, Cuyahoga App. No. 82951, 2004-Ohio-2406, "`[k]nowingly' does not require the offender to have the specific intent to cause a certain result. That is the definition of `purposely.' Instead, whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." Id. at ¶ 16, quoting State v. Huff (2001), 145 Ohio App.3d 555. "The test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria. * * * However, if a given result is probable, a person will be held to have acted knowingly to achieve it because one is charged by the law with knowledge of the reasonable and probable consequences of his own acts." Id., quotingState v. McDaniel (May 1, 1998), Montgomery App. No. 16221.
 {¶ 19} Defendant's appeal parallels Dixon in a number of respects. As in Dixon, the state's evidence here indicates defendant "voluntarily and knowingly chose to engage in the physical altercation" with Roberts. Id. at ¶ 24. Because defendant did so, "the court *Page 8 
was entitled to find that [she] was aware that [her] conduct would probably cause a certain result," even though the state did not prove that "[she] would cause any specific injury" to Roberts. Id. On facts similar to Dixon, the testimony here regarding defendant's confrontation with Roberts, including her kicking and swinging at him, if believed, was sufficient to permit a rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt. While, as inDixon, the trial court used the word "intent" to explain its finding, reversal is not necessary where no jury was instructed about the need to find intent and the trial court's use of intentional, or purposeful, conduct is a standard higher than the "knowingly" standard required to find defendant guilty. Id. See, also, State v. Trikilis, Medina App. No. 04CA0096-M, 2005-Ohio-4266 (finding sufficient evidence to support conviction of assault on a peace officer where defendant was flailing his arms and struck the officer in the face).
 {¶ 20} Nor does the trial court's finding Roberts suffered no actual harm undermine the conviction. "Actual physical harm is not required; an attempt to commit physical harm will suffice." State v. Taylor, Seneca App. No. 13-03-37, 2003-Ohio-7117, at ¶ 12. In that case, Taylor's attempt to elbow, kick, and head butt an officer allowed a rational trier of fact to find Taylor attempted to physically harm the officer. Similarly, defendant's kicking at Roberts supported a finding that defendant attempted to cause harm to him.
 {¶ 21} Defendant also contends that, even if sufficient evidence supports the judgment, the manifest weight of the evidence does not. Without question, defendant testified to a very different set of facts than did the state's witnesses. At least two factors allowed the trial court to find the state's witnesses more credible. Defendant's credibility *Page 9 
was questioned when she testified that at the time the officer approached her, she was on her way out the door. She explained she had an item or two to pick up and then could leave. Undermining her testimony, however, was that defendant left her cart at the back of the store near the meat department where the altercation ultimately occurred. As questioning pointed out, had defendant actually been on her way out of the store, she more than likely would have taken the cart with her toward the front of the store and toward checkout.
 {¶ 22} More significantly, Roberts' testimony was corroborated in many aspects through the testimony of other state's witnesses and a videotape of the incident. Consistent with Roberts' testimony, Perry testified that after Roberts asked defendant if she had a confrontation with Perry, defendant said, "Yes, I cussed her out." (Tr. 9.) After some further exchange of words, Perry stated that defendant looked at her and said "[y]ou're lucky I didn't kick your ass." (Tr. 10.) As did Roberts, Perry testified Roberts immediately arrested, or tried to arrest, defendant, but defendant struggled to prevent it. Perry explained that defendant twisted and turned to deter Roberts from getting her arm to a position where she could be handcuffed. Similar to Roberts' testimony, Perry testified that when Roberts tried to take defendant down by tripping her, both fell at the same time. According to Perry, defendant fought Roberts on the floor, hitting and kicking him. Perry testified Roberts finally handcuffed defendant, but defendant kept screaming vulgarities. Like Roberts, Perry stated that when defendant would not get up off the floor, Roberts pulled her "across the floor on her butt." (Tr. 12.) *Page 10 
 {¶ 23} Similarly, Mark Farmer, who was working in the produce department at the time, witnessed the incident and corroborated much of Perry's testimony. He testified he looked up because he heard several packages fall and heard a big crashing noise. He saw a woman customer that he identified as defendant having words with Perry. According to Farmer, defendant said, "[i]'ll beat her ass. She doesn't know who she's talking to." (Tr. 22.) Farmer attempted to calm her, but defendant proceeded out of the area, still cussing.
 {¶ 24} Farmer then heard a confrontation near the meat department and observed it was the same customer. As did Roberts, Farmer testified Roberts told defendant to leave, and in response she shrugged away from him, swinging her arms at him and hitting her hand on his face. Consistent with Roberts' testimony, Farmer stated Roberts maced defendant when she would not leave. Farmer testified defendant still resisted, swinging when Roberts tried to handcuff her; another employee intervened to assist. Like Roberts and Perry, Farmer stated Roberts asked defendant to get up and, when she would not, he dragged her down the main aisle to the front. When Farmer was asked whether defendant was intentionally trying to hit Roberts, he testified, "[y]es, she was from what I saw." (Tr. 31.)
 {¶ 25} Finally, Kermit McDuffie, co-manager of the Kroger on the date of the incident, corroborated Roberts' testimony when he stated he saw a woman swinging at Roberts, whom Roberts had to mace to fully handcuff. Consistent with Roberts' testimony, McDuffie testified that while defendant and Roberts were on the ground tussling, defendant was struggling, trying to hit Roberts by swinging and kicking at Roberts. *Page 11 
 {¶ 26} The state's witnesses thus corroborated each other in many significant respects. With their testimony, the trial court was well within its discretion to find the state's testimony more credible than that of defendant, who, even in less significant aspects of her testimony, was able to present a less than cohesive explanation for her actions. Accordingly, we cannot say the trial court lost its way in finding defendant guilty of assault on a peace officer. Defendant's two assignments of error are overruled.
 {¶ 27} Having overruled defendant's two assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
 FRENCH and TYACK, JJ., concur. *Page 1