[Cite as *State v. Fussell*, 2011-Ohio-4950.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   95875

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LESTA FUSSELL

DEFENDANT-APPELLANT

## JUDGMENT:
## REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-535077

**BEFORE:**    Boyle, P.J., Cooney, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:**   September 29, 2011
**ATTORNEY FOR APPELLANT**

Nancy E. Schieman
9368 Sunrise Court
Mentor, Ohio   44060

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:   Sherrie S. Royster
        T.   Allan Regas
Assistant County Prosecutors
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY J. BOYLE, P.J.:

{¶ 1}   Defendant-appellant, Lesta Fussell, appeals her convictions for felonious assault.   She raises five assignments of error for our review:

{¶ 2}   "[1.]   The trial court abused its discretion by excluding defense witnesses from testifying as a sanction for a discovery rule violation.

{¶ 3}   "[2.] Appellant's counsel was constitutionally ineffective in his representation of appellant because he failed to present a defense due to his own errors and omissions.

{¶ 4} "[3.]   The trial court erred by not holding a competency hearing as required under R.C. 2945.37.

{¶ 5} "[4.]   The trial court erred by overruling appellant's Crim.R. 29 motion for a judgment of acquittal because there was not sufficient evidence that appellant knowingly attempted to cause physical harm to another.

{¶ 6} "[5.]   The verdict finding appellant guilty of two counts of felonious assault was against the manifest weight of the evidence."

{¶ 7} We find merit to Fussell's first assignment of error, vacate her convictions, and reverse for a new trial.

Procedural History and Factual Background

{¶ 8} In March 2010, the grand jury indicted Fussell on three counts of felonious assault in violation of R.C. 2903.11(A)(2), with one of the counts carrying a furthermore clause that the victim was a peace officer.   Specifically, Count 4 charged that Fussell knowingly caused or attempted to cause physical harm to Officer Antonio Malone with a microwave oven and pipes.   Counts 5 and 6 charged that Fussell knowingly caused or attempted to cause physical harm to Kaylin and Rosalind Heard with metal pipes.   The first three counts only charged codefendant, Rashean Fussell ("Rashean"), appellant's son.   The two were tried together, but Fussell's case was tried to a jury, and Rashean's case was tried to the bench.   The following facts were presented to the jury.

{¶ 9} Fussell's sister, Rosalind Heard ("Rosalind"), testified that on March 8, 2010, she had gotten into a dispute with Fussell over the use of Rosalind's car. Rosalind explained that she had been letting Fussell use her car but Fussell had gotten too many parking tickets, so Rosalind had gone to Fussell's house to take the license plates off of the car. Rosalind testified that she called the police to tell them "there was a family altercation" because Fussell had called them first. Rosalind said that when the police arrived, she no longer wanted to take the plates off the car because Fussell had "mental issues" and was very upset. Rosalind said that Fussell "started freaking out" after the police made Rosalind's husband remove the license plates. Fussell began throwing things off the second-floor porch toward the car. Rosalind testified that she did not get hit with anything.

{¶ 10} Rosalind stated that she had her three grandchildren with her that day, Kaylin, Calvin, and K-Shon. She said that Kaylin was standing outside of the car "when [Fussell] was throwing things at my car." On cross-examination, Rosalind stated that Kaylin was not injured, nor did she see him get him with a pipe. Rosalind further explained on cross-examination that Kaylin had a "slight scratch" on his head, but she did not know it until the police called her that evening and asked how Kaylin was doing because he had gotten hit with a pipe. Rosalind never saw Fussell throw a microwave off the porch.

{¶ 11} Rosalind stated that she was trying to calm her sister and her mother. Rosalind told the police to leave because "this was a family matter," and because she believed that the police were agitating her sister's mental problems. But Rosalind said that the police ordered her to leave.

{¶ 12} Officers Dominque King and Antonio Malone were the first officers to arrive at Fussell's house. Fussell was standing on the second-floor porch, and Rosalind was standing in the yard. Fussell told police it was her car, but Rosalind explained that it was actually her car. Officer King ran the license plate and confirmed that the car was titled to Rosalind. Officer King stated that she "allowed" Rosalind to remove the license plates, which angered Fussell, who began throwing items from the second-floor porch. Officer King testified that Fussell "was throwing things at her sister, and there was a younger child [Kaylin Heard] there ***, and he had got hit in the head."

{¶ 13} Officer King identified three metal pipes and two plastic pipes that Fussell had thrown from the porch. Officer King also saw a microwave land right next to her feet, that she said "could have hit [her] if [she] would have been maybe two inches over." Although she did not see Fussell throw the microwave, Officer King looked up when she saw the microwave and Fussell was the only person on the second-floor porch. Officers King and Malone were standing right beside each other, near the front porch, when the microwave landed on the ground. Officer Malone explained that the

microwave landed just behind Officer King's foot, but that they were standing side by side, "almost probably touching shoulders."

{¶ 14} Officer King further testified that Rashean came out of the house as they were walking up to it. The officers told him that they needed to enter the home to arrest Fussell. But Rashean would not let them in the house and proceeded to lock the front door. The officers arrested Rashean and called for backup. Officers Perez and Thomas Telegdy arrived to assist. Rashean refused to get into the police vehicle and fought the officers.

{¶ 15} At the close of the state's case, Fussell moved for a Crim.R. 29 acquittal, which the trial court denied. Fussell then rested, and renewed her Crim.R. 29 motion, which the trial court again denied.

{¶ 16} The jury found Fussell guilty of Count 4, with the furthermore clause that the victim was a peace officer, and guilty of Count 6 (the victim being Rosalind Heard), but not guilty of Count 5 (the victim being Kaylin Heard). The trial court sentenced Fussell to three years in prison: three years on Count 4 and two years on Count 6, to be served concurrent to one another. The trial court also notified Fussell that she would be subject to a mandatory five years of postrelease control upon her release from prison.

## Discovery Sanction

{¶ 17} In her first assignment of error, Fussell argues that the trial court abused its discretion when it excluded all but one of her witnesses as a sanction for not providing

her witness list to the prosecution. She argues that the trial court's actions violated her constitutional right to present a defense.

{¶ 18} Defense counsel never responded to the prosecutor's request for discovery. On the day of trial, defense counsel attempted to submit his witness list to the prosecutor. The prosecutor objected. The trial court indicated to defense counsel that it was a little late. Defense counsel responded: "Yes, I understand that, Your Honor. It was my intent to provide a witness list, but I would be welcome to provide the addresses and phone numbers for all of those, because they are all family members, and some of the witnesses that are on my list are witnesses that are on the State's list in this case. They are all family." At that point, the trial court stated, "I'll take up these witnesses as they come up. I may very well excuse witnesses."

{¶ 19} At the close of the state's case and after Fussell's Crim.R. 29 arguments, defense counsel informed the court that he intended to call witnesses. The prosecutor renewed her objection, claiming that defense counsel had still not provided her with a list, that she had no names, addresses, or phone numbers, and that she had not been able to check any criminal background records.

{¶ 20} Defense counsel argued that he had informed the prosecutor that he had the list of witnesses in his hand before voir dire began. But because the prosecutor objected, defense counsel did not physically hand her the list. Defense counsel argued that he told the prosecutor that he intended to call family members who were present that day and that

some of those witnesses were on the state's witness list. The trial court stated that defense counsel could call any witness that was also on the state's list.

{¶ 21} Defense counsel then informed the trial court that his witnesses were present and argued: "In the interest of justice — if the prosecutor chooses to ascertain whether they have criminal histories or not, I think in the interest of justice that those witnesses be allowed to testify. To the extent that this court has suggested a formal list has not been filed with the court, certainly the State of Ohio knew that I was going to call certain witnesses, and I was reading —   looking at a list of witnesses that I had.

{¶ 22} "Two of those witnesses are on the state's list, but one of those witnesses is not going to testify. Rosalind Heard was one of the witnesses that I had listed as my witness. Certainly the state knows that the husband of Rosalind Heard was present. Certainly it was in my contemplation to call Miss Heard's husband, who was the one who Miss Heard testified had taken off the plates at the behest of police officers.

{¶ 23} "Nikki Fussell, who is the daughter of — there was testimony being borne out in this case that she was, in fact, the person who secured the dogs. To say that the state is prejudiced by the testimony of those two witnesses doesn't make sense to me. Likewise, there was another witness who is the mother of Kaylin, who is Kimberly Heard, who is the daughter of Rosalind Heard, who was present at the scene."

{¶ 24} The prosecutor informed the trial court that it would not object to Rosalind's husband testifying. But she objected to Nikki Fussell and Kimberly Heard

testifying. The trial court stated that it would allow defense counsel to call Rosalind's husband to testify, but not the other two witnesses.

{¶ 25} Defense counsel asked "what would be the objection for Nikki Fussell? It has been established from the evidence that the daughter of my client — [.]" The trial court interrupted defense counsel at that point and stated that the prosecutor was objecting because defense counsel did not provide her with a list of witnesses and she was entitled to object.

{¶ 26} Later, when the jury was deliberating, defense counsel proffered that he had intended to call the appellant's grandmother who lived next door (Juanita Miller), a neighbor (Charles Barnes), Rosalind's husband (Alphonzo Thorton), two of appellant's daughters (Nikki and Carmella Fussell), and Kaylin's mother (Kimberly Heard). Defense counsel explained that these witnesses would have provided testimony that the microwave was not thrown in close proximity of the officers and that Kaylin did not sustain a physical injury from being hit by the metal pipe. Defense counsel stated that these witnesses also would have provided testimony about the background of the case and "what was communicated to the officers about [appellant's] condition and the actions of the police officers who exacerbated or made the situation worse by not allowing family members to intervene." Finally, defense counsel maintained that these witnesses would have provided testimony "that the sequence of events as the police officers have testified in this case were not truly reflective of all of what occurred."

{¶ 27} The state contends that during the trial court's discussion regarding the proposed defense witnesses, defense counsel argued that he wanted to call only Rosalind Heard, Rosalind's husband, Nicki Fussell, and Kimberly Heard. The state maintains that defense counsel never mentioned Juanita Miller, Charles Barnes, or Carmella Fussell when they were arguing the issue to the court. But nothing prevented the state from objecting when defense counsel was proffering witnesses and testimony. Thus, we find this argument to be without merit.

{¶ 28} We review a trial court's discovery sanction for an abuse of discretion. *State v. Simmons*, 8th Dist. No. 89119, 2008-Ohio-682, citing *State v. Parson* (1983), 6 Ohio St.3d 442, 453 N.E.2d 689. The trial court abuses its discretion when it imposes a sanction that is not consistent with the purpose of the rules of discovery. See *Lakewood v. Papadelis* (1987), 32 Ohio St.3d 1, 511 N.E.2d 1138.

{¶ 29} In *Papadelis*, the seminal case on this issue, the Ohio Supreme Court explained that "'[t]he philosophy of the Criminal Rules is to remove the element of gamesmanship from a trial.' *State v. Howard* (1978), 56 Ohio St.2d 328, 333, 383 N.E.2d 912. The purpose of discovery rules is to prevent surprise and the secreting of evidence favorable to one party. The overall purpose is to produce a fair trial." *Papadelis* at 3, citing *State v. Mitchell* (1975), 47 Ohio App.2d 61, 80, 352 N.E.2d 636.

{¶ 30} Former Crim.R. 16(C)(1)(c)[1] required the defendant, upon request, to provide the prosecution the names of all witnesses that he or she intended to call at trial. If a party failed to comply with discovery, former Crim.R. 16(E)(3) provided:

{¶ 31} "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."

{¶ 32} The Sixth Amendment to the United States Constitution and Section 10, Article I, of the Ohio Constitution grant an accused the right to summon to trial witnesses on his or her behalf. In the case of *Washington v. Texas* (1967), 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019, the United States Supreme Court explained:

{¶ 33} "The right of an accused to have compulsory process for obtaining witnesses in his favor stands on no lesser footing than the other Sixth Amendment rights that we have previously held applicable to the States. This Court had occasion in *In re Oliver*, 333 U.S. 257 (1948), [68 S.Ct. 499, 92 L.Ed. 682] to describe what it regarded as the most basic ingredients of due process of law. It observed that:

---

[1] Crim.R. 16 was amended effective July 1, 2010. Discovery in this case, however, was conducted pursuant to the former rule and was completed by July 1, 2010.

{¶ 34} "'A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense — a right to his day in court — are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel.' 333 U.S. at 273 [68 S.Ct. 499, 92 L.Ed. 682], (footnote omitted).

{¶ 35} "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law." *Washington*, 388 U.S. at 18-19.

{¶ 36} Because the exclusion of witnesses "may infringe on a criminal defendant's Sixth Amendment right to present a defense," the Ohio Supreme Court held in *Papadelis* that a trial court must make an inquiry into the circumstances surrounding the violation before imposing a sanction. In doing so, some factors to be considered are: (1) the extent of surprise or prejudice to the state; (2) the impact exclusion of the witness would have on the evidence and the outcome; (3) whether the violation was in bad faith; and (4) the effectiveness of less severe sanctions. Id.

**{¶ 37}** Moreover, the Ohio Supreme Court stressed that after considering these factors, the trial court must impose the least drastic sanction possible that is also consistent with the state's interest. *Papadelis* at 5. "If a short continuance is feasible and would allow the state sufficient opportunity to minimize any surprise or prejudice caused by the noncompliance with pretrial discovery, such alternative sanction should be imposed. Even citing defense counsel for contempt could be less severe than precluding all of the defendant's testimony." (Citation omitted.) Id. The Court emphasized, however, that exclusion was still permissible as long as it would not completely deny the defendant his constitutional right to present a defense. Id. at 6.

**{¶ 38}** Here, there is nothing in the record to indicate that the trial court held a hearing on the matter or considered the factors set forth in *Papadelis*. The trial court imposed a severe sanction on Fussell, denying her the right to present all but one of her witnesses. There is also no evidence that defense counsel's actions were willful or motivated by bad faith. Fussell's proffered evidence is certainly material — at least as far as one of the felonious assault charges with the furthermore clause that the victim was a peace officer (she claims that her witnesses would establish that the microwave was not thrown in close proximity to Officers King and Malone — and this furthermore clause carries mandatory prison time if convicted because it raises the felony level to a first-degree felony).

**{¶ 39}** Further, there is no reason evident in the record as to why a short continuance would not have been effective to protect the state's interests. There is nothing to indicate the trial court even considered a less severe sanction. The matter was brought to the attention of the trial court before voir dire had begun. There were no speedy trial issues. Although we understand the court's frustration, a short continuance would have been minimally disruptive. It also would have allowed the state an opportunity to obtain background information and prepare accordingly. At the same time, it would have permitted Fussell the opportunity to present testimony that might have been determinative to the outcome of her case.

**{¶ 40}** The sanction in this case penalized Fussell for possible or actual lack of timely efforts of counsel and for a matter over which she had no control. Such a result denied Fussell her Sixth Amendment right to present a defense. As the Second Appellate District stated, "[o]ur system of jurisprudence in this country is, admittedly, skewed to the side of the defendant in a criminal matter. Some would say that it is too far skewed. However, when the basic Sixth Amendment right of a defendant to present a case has been forfeited by a sanction under the rules of discovery, without a hearing on the issue of non-compliance with the rules, a fundamental error has occurred." *State v. Amburgey* (1993), 86 Ohio App.3d 635, 641, 621 N.E.2d 753.

**{¶ 41}** We therefore sustain Fussell's first assignment of error, vacate her convictions, and reverse and remand for a new trial.

{¶ 42} Although most of Fussell's remaining assignments of error have been rendered moot by our disposition of her first one, we must still address sufficiency of the evidence due to double jeopardy concerns. Fussell maintains that the state failed to prove that she knowingly attempted to cause physical harm to her sister or Officer Malone.

{¶ 43} When an appellate court reviews a record upon a sufficiency challenge, "'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶77, quoting *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 44} Fussell was convicted of two counts of felonious assault under R.C. 2903.11(A)(2), which provides in part that "[n]o person shall knowingly *** [c]ause or attempt to cause physical harm to another *** by means of a deadly weapon or dangerous ordnance." One of the victims was a peace officer. R.C. 2903.11(B) states that "[i]f the victim of the offense is a peace officer, as defined in section 2935.01 of the Revised Code, felonious assault is a felony of the first degree."

{¶ 45} R.C. 2901.22(B) provides that "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is

aware that such circumstances probably exist." In *State v. Dixon*, 8th Dist. No. 82951, 2004-Ohio-2406, this court explained:

{¶ 46} "'"Knowingly" does not require the offender to have the specific intent to cause a certain result. That is the definition of "purposely." Instead, whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself.' *State v. Huff* (2001), 145 Ohio App.3d 555, 763 N.E.2d 695. 'The test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria. *** However, if a given result is probable, a person will be held to have acted knowingly to achieve it because one is charged by the law with knowledge of the reasonable and probable consequences of his own acts.' *State v. McDaniel* (May 1, 1998), 2d Dist. No. 16221." *Dixon* at ¶16.

{¶ 47} The state presented evidence, through Officers King and Malone, that Fussell began throwing metal and plastic pipes at her sister when the license plates were removed from the car. Further, Officers King and Malone testified a microwave oven landed right next to them after being thrown from the second-floor porch, and Fussell was the only one on the porch at that time. Officer King's and Officer Malone's testimony, if believed, provide sufficient evidence for a jury to find Fussell guilty of the charges beyond a reasonable doubt.

{¶ 48} Fussell's fourth assignment of error is overruled.

Judgment reversed and convictions vacated. This case is remanded for a new trial.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

MARY J. BOYLE, PRESIDING JUDGE

COLLEEN CONWAY COONEY, J., CONCURS;
SEAN C. GALLAGHER, J., DISSENTS WITH SEPARATE OPINION

SEAN C. GALLAGHER, J., DISSENTING:

{¶ 49} I respectfully dissent from the majority's opinion, and I would find that the trial court did not abuse its discretion in prohibiting Fussell from calling witnesses on the day of trial after failing to provide the state with a witness list as required pursuant to Crim.R. 16.

{¶ 50} I believe the majority opinion is predicated on the view that the law in play is the version of Crim.R. 16 in effect prior to July 1, 2010. My review of the record

indicates that while the trial was initially scheduled for June 25, 2010, and the discovery request was made on June 28, 2010, the trial did not commence until August 2010, after the new rule was in place.

{¶ 51} The purpose of the revised Crim.R. 16, adopted on July 1, 2010, is to provide all parties in a criminal case with the information needed for a full and fair adjudication. Crim.R. 16(A). Effective July 1, 2010, the rule was amended to provide "open discovery." The new rule applies equally to both the state and the defendant. Id. This is a two-way street, requiring both prosecutors and defendants to provide discovery to ensure a fair exchange of information needed for adjudication.

{¶ 52} The majority's decision applies the analysis used for the former rule, which essentially undercuts the purpose of the new "open discovery" provisions. By allowing or requiring a trial court to use a lesser sanction when dealing with noncomplying parties, the new rule is effectively gutted. In this instance, it involves a defendant's failure to disclose, but the majority's rationale could easily be applied to a prosecutor's failure to disclose information in the future.

{¶ 53} While I understand the majority's rationale in attempting to promote equity, these efforts in the past failed. The 35-year debate over open discovery and the resulting compromise, including the prohibition of nondisclosed evidence, was adopted to ensure compliance with the new provisions. While not intended, the majority's decision could promote a prosecutor's or a defendant's dilatory gamesmanship, thereby ensuring a delay

of trial and treating the state or defense differently in relation to discovery matters. Again, this reverts the system to the pre-open-discovery uncertainty the new rules were meant to correct.

**{¶ 54}** The new discovery rules apply equally to the state and defendants. Therefore, I would find that the trial court did not abuse its discretion by excluding the defendant's witnesses when she failed to provide a timely witness list. Such conduct cannot be rewarded.

**{¶ 55}** Further, while not addressed by the majority, I would not find the failure to disclose the witnesses and the resulting inability to call those witnesses as being grounds for a finding that counsel's performance was ineffective.