[Cite as *State v. Metters*, 2024-Ohio-1338.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 21AP-692 |
| v. | : | (C.P.C. No. 19CR-5008) |
| Grant A. Metters, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on April 9, 2024

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Sheryl L. Prichard*, for appellee.

**On brief:** *Brian J. Rigg*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

JAMISON, J.

{¶ 1} Defendant-appellant, Grant A. Metters, appeals the judgment of the Franklin County Court of Common Pleas, convicting him of felonious assault against a peace officer and possessing criminal tools. For the following reasons, we reverse.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 1} Metters was indicted in September 2019 on one count of felonious assault against a peace officer in violation of R.C. 2903.11, a first-degree felony and one count of possessing criminal tools in violation of R.C. 2923.24, a fifth-degree felony. The sequence of events that led to Metters' arrest and charges began when Metters' neighbor, Rachel Ohlinger, called the Grandview Heights Police Department on September 25, 2019, after she observed Metters in his back yard screaming obscenities and shoveling something over the fence dividing their properties into her back yard.

{¶ 2}   Ohlinger testified she heard Metters shouting "effing dog." (Sept. 14, 2021 Tr. at 47.) Ohlinger had previous encounters with Metters complaining about her dog going into his backyard.  Because Ohlinger was "extremely scared" by Metters' conduct and her husband was out of town for work, she believed calling the police was the right thing to do. (Tr. at 49.)

{¶ 3}   Three Grandview Heights police officers responded to Ohlinger's call, and two of those officers, Matthew Smith and Joseph Ford, testified for plaintiff-appellee, State of Ohio, at trial.  Grandview Heights police Sergeant Greg Gillespie, who arrived at the scene later, also testified for the state.  Additionally, the state played for the jury a dash cam video from Officer Ford's cruiser.  The stationary view from the dash cam showed the front of Metters' house, a portion of Metters' driveway, and the sidewalk.

{¶ 4}   When Officer Smith arrived at the scene, he heard screaming and "a lot of profanity" coming from Metters' back yard, so he approached and spoke with Metters.  (Tr. at 60.)  Officer Smith described Metters as "super irate" and stated he was "screaming at the top of his lungs" that Ohlinger's dog had "pooped in his yard." (Tr. at 62.)  Officer Ford similarly testified that Metters was "very irate" and screaming about a neighbor's dog.  (Tr. at 139.)  Metters ordered the police to leave his property—screaming, "get the fuck out, bitches"—and entered the house through the back door.  (Pl.'s Ex. F at 1:08.)

{¶ 5}   By the time the officers had retreated to the street, Metters had re-emerged from the house onto the front porch, screaming "I ain't here to pick up their dog shit" and leveling profanity at the officers before going back inside.  (Pl's Ex. F. at 2:00.)  Before leaving the scene, however, the officers learned from their dispatcher of a possible arrest warrant for Metters for a misdemeanor traffic offense out of Franklin County Municipal Court.  Absent extenuating circumstances, the police department's general policy at the time was to arrest someone who had an active warrant.

{¶ 6}   While the officers waited for verification that Metters' warrant remained valid, Metters began, in his own words, "berating" the officers from the front door. (Tr. at 107.)  In doing so, Metters shouted profanity and racial epithets at the officers.

{¶ 7}   Sergeant Gillespie arrived on the scene while the officers were waiting for verification of the warrant's validity.  In anticipation that he might have physical contact with Metters to effectuate an arrest, Sergeant Gillespie brought from his vehicle a pair of

leather, kevlar-lined gloves that are intended to prevent punctures, cuts, and lacerations to the hands.

{¶ 8} Once they learned from their dispatcher that Metters' warrant remained active, Officers Smith, Ford, and Sergeant Gillespie climbed the steps to Metters' front porch and approached the front door. Sergeant Gillespie spoke with Metters through the door. He informed Metters that there was a warrant for his arrest and asked him to step outside, but Metters refused. Sergeant Gillespie testified that, in speaking with Metters, he tried to de-escalate the situation and "calm him down" because Metters was "still very aggressive and agitated." (Tr. at 176, 186.) Officer Ford was holding open the screen door, but the main door to the house was closed. The main door was a wood-framed door with glass or plexiglas panels, including a large central plexiglas panel and several smaller panels.

{¶ 9} Sergeant Gillespie explained to Metters that he was under arrest and the police were not going to leave until they took care of the outstanding warrant. He could plainly see Metters through the door. Metters continued to yell, calling the officers "bitches," and telling them to "get the fuck out," and he refused to exit the house. (Pl.'s Ex. F at 8:25-8:47.) Metters then kicked the door's central plexiglas panel, knocking it out, towards the officers.

{¶ 10} At that point, Sergeant Gillespie deployed his pepper spray toward Metters' face. Officer Ford observed Metters react to the pepper spray and "drop[] back," so that Officer Ford lost sight of him. (Tr. at 159.) Sergeant Gillespie likewise lost sight of Metters after hitting him with the pepper spray, as Metters moved to his right. Sergeant Gillespie then began to pull out the fragmented pieces left hanging in the door panel so he could look in and locate Metters.

{¶ 11} Within a second or two, Sergeant Gillespie saw Metters crouching or bending to his left and then standing as he forcefully swung a baseball bat in an "upper cut-type motion" with both hands toward Sergeant Gillespie. (Tr. at 194.) Metters had modified the wooden baseball bat by driving nails and screws into it to make spikes. Closest to the top of the bat were rusty nails with their heads snipped off, and below that were newer screws. Metters admitted that he had designed the bat to be intimidating, "to instill fear," and that it was dangerous. (Sept. 15, 2021 Tr. at 138-39.) The bat hit Sergeant Gillespie's right hand,

puncturing both the pepper-spray canister in his hand and the kevlar-lined glove he was wearing. Sergeant Gillespie pulled his hand back, yelled "I've been hit," and told the officers to "boot the door." (Sept. 14, 2021 Tr. at 79.) He immediately knew that his right hand "was out of commission." (Tr. at 200.)

{¶ 12} Officer Smith kicked the door in, and the officers and Sergeant Gillespie entered the house. Officer Ford, the first officer to enter the house, ordered Metters to get on the ground, and Metters complied. Metters had already dropped the bat and had nothing in his hands when Officer Ford ordered him to the ground. Officer Smith stated that, when he entered the house, Metters was on the floor, on his stomach, with his arms out to his side, screaming and complaining about the pepper spray. Sergeant Gillespie stated, "[y]ou hit me with a baseball bat," "[y]ou hit me in my hand." (Tr. at 119.) Officer Smith handcuffed Metters, who was arrested, removed from the scene, and taken to jail.

{¶ 13} Sergeant Gillespie was transported to the emergency room at Riverside Methodist Hospital, where it was determined that "the bone in my hand for the middle finger was shattered," "there was a puncture wound to my ring finger * * * that * * * went through one side and out the other," and that "there was a lot of soft tissue damage" and "bruising." (Tr. at 202.) Sergeant Gillespie required multiple surgeries and was off work for almost ten months. The parties stipulated that Sergeant Gillespie suffered serious physical harm as a result of this incident.

{¶ 14} At the conclusion of the state's case, Metters moved the trial court for acquittal, pursuant to Crim.R. 29, arguing that, because of the effects of the pepper spray, he did not knowingly strike Sergeant Gillespie. The trial court denied the motion.

{¶ 15} The defense called two witnesses: Grandview Heights Police Detective Zac Scurlock and Metters.

{¶ 16} Detective Scurlock was one of two detectives who investigated this incident. After walking through the scene, Detective Scurlock interviewed Sergeant Gillespie and Officer Ford before completing a report. In his report, Detective Scurlock wrote that Metters had "aimlessly" swung the bat at Sergeant Gillespie. (Sept. 15, 2021 Tr. at 91.) He explained at trial, by use of the word "aimlessly," he meant to convey that he did not believe that Metters "was aiming for anything in particular on [Sergeant Gillespie's] body." (Tr. at 91.)

{¶ 17} Finally, Metters testified in his own defense. He stated he had probably consumed seven or eight beers in the hours leading up to the incident at issue and admitted that he had become "very angry" when he "found poop," which he believed came from the Ohlinger's dog, near the gap between the fence and the Ohlinger's garage. (Sept. 15, 2021 Tr. at 102, 104.) Metters conceded that he screamed at the officers, as audible in the dash cam video, but stated he entered the house through the back door after the officers told him to calm down and go inside. After seeing the officers congregated in front of the house, however, Metters re-emerged onto the front porch and "kind of started berating them again." (Tr. at 106.)

{¶ 18} By the time the officers climbed the steps onto the porch, Metters was back inside the house. He stated, "they kept telling me to come out, and I knew if I went out there, they were going to arrest me" on the outstanding warrant. (Tr. at 108.) Metters stated he was not "go[ing] down on a no-ops" offense. (Tr. at 137.)

{¶ 19} Metters testified he retrieved the bat before he kicked and broke the plexiglass door panel and before Sergeant Gillespie deployed his pepper spray. According to Metters, he deliberately picked up the bat because he thought the officers might respond by shooting him. He stated, "I turned my back to [Sergeant Gillespie] and I took about four steps. That's when I reached over and got the bat out of the corner, and I turned back around, and I kicked the door a few times, and then I was maced." (Tr. at 114.) He stated that he then, again, turned away from the door after being hit with the pepper spray.

{¶ 20} Regarding the effects of the pepper spray, Metters testified, "I was blinded, I was coughing, I was vomiting. When it got in my ear, I lost my equilibrium, so the room was spinning, and * * * I dropped the bat and * * * I went off to the left, and then it was -- went down on my hands and knees because I was very -- ready to fall down." (Tr. at 116-17.) Metters claimed he did not see a hand come through the door.

{¶ 21} Although he denied during his trial testimony that he "swung" the bat, Metters told police investigators on the night of the incident that he swung the bat once and then thought, "[o]h, shit," and threw the bat on the ground. (Sept. 15, 2021 Tr. at 141.) He told the police his intention in grabbing and swinging the bat was "to make [the police] go away." (Tr. at 141.) At trial, Metters agreed that he had told the police, "I recall swinging [the bat]. I was so mad. I said I was not going." (Tr. at 142.) Metters acknowledged that

he knew what he was doing when he dropped the bat and when he complied with Officer Ford's order to get on the ground, seconds after being hit with pepper spray.

{¶ 22} A jury trial commenced on September 13, 2021. After the conclusion of the defense's case, Metters renewed his Crim.R. 29 motion for acquittal, which the trial court again denied. The trial court also denied Metters' request to instruct the jury on the offense of reckless assault, as a lesser-included offense of felonious assault. The jury found Metters guilty of felonious assault of a peace officer as alleged in Count 1 of the indictment, a first-degree felony, and of a stipulated lesser-included offense of possessing criminal tools, a first-degree misdemeanor.

{¶ 23} On November 22, 2021, trial court convicted appellant of felonious assault against a peace officer and possessing criminal tools, and sentenced Metters to a prison term of five to seven and one-half years for felonious assault and to a concurrent 60-day term for possessing criminal tools.

{¶ 24} Metters timely appealed to this court from the judgment of conviction.

## II.  ASSIGNMENTS OF ERROR

{¶ 25} Appellant assigns the following as trial court errors:

> 1. The trial court erred when it denied Defendant-Appellant's request for a jury instruction on reckless assault.
>
> 2. The trial court erred when it denied Defendant-Appellant Metters' Rule 29 Motion for Acquittal.
>
> 3. The verdicts of guilt as to count one was against the manifest weight of the evidence.

## III.  LEGAL ANALYSIS

### A. First Assignment of Error

{¶ 26} In Metters' first assignment of error, he contends the trial court erred when it denied his request for a jury instruction on reckless assault, a lesser-included offense of felonious assault under R.C. 2903.11(A)(1). We agree.

{¶ 27} Trial courts must apply a two-prong test to determine whether an instruction on a lesser-included offense should have been given to the jury. *State v. Blanton*, 2d Dist. No. 29451, 2023-Ohio-89, ¶ 27. First, the court must determine if the offense for which the instruction is requested is a lesser-included offense of the charged offense. *Id*. Next, the

court must determine whether " 'the evidence adduced at trial would support an instruction on the lesser included offense.' " *Id.*, quoting *State v. Lambert*, 2d Dist. No. 28655, 2021-Ohio-17, ¶ 41, citing *State v. Kidder*, 32 Ohio St.3d 279, 281 (1987).

{¶ 28} Here, the parties agree that reckless assault is a lesser-included offense of felonious assault under R.C. 2903.11(A)(1). Further, this court has previously stated, "reckless assault is a lesser included offense of R.C. 2903.11(A)(1) because reckless assault carries a lesser penalty than felonious assault, this form of felonious assault cannot be committed without also committing reckless assault, and the only factor distinguishing the two offenses is the greater mental state required for felonious assault." *State v. Jackson*, 10th Dist. No. 94APA04-531, 1994 Ohio App. LEXIS 5504, *10 (Dec. 8, 1994), citing *State v. Colston*, 2d Dist. No. 13599, 1993 Ohio App. LEXIS 6327 (Dec. 17, 1993).

{¶ 29} In deciding whether to instruct a jury on a lesser-included offense, "the trial court must consider both the state's evidence and the defense's evidence, and it must view the evidence in the light most favorable to the defendant." *State v. Fox*, 10th Dist. No. 17AP-295, 2018-Ohio-501, ¶ 21, citing *State v. Anderson*, 10th Dist. No. 06AP-174, 2006-Ohio-6152, ¶ 39, and *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, ¶ 37. Before it is required to instruct the jury on the lesser-included offense, "the court must find 'sufficient evidence' to allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser-included * * * offense." *Fox* at ¶ 21, quoting *State v. Noor*, 10th Dist. No. 13AP-165, 2014-Ohio-3397, ¶ 84.

{¶ 30} The Supreme Court of Ohio has made it clear that the determination whether the evidence is sufficient to justify giving a jury instruction on a lesser-included offense is within the sole discretion of the trial court. *State v. Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948. As a result, absent an abuse of discretion under the facts and circumstances of the case, we will not disturb a trial court's refusal to instruct a jury on a lesser-included offense. *Noor* at ¶ 84. A trial court abuses its discretion when it acts unreasonably, arbitrarily, or unconscionably. *State v. Beasley*, 152 Ohio St.3d 470, 2018-Ohio-16, ¶ 12, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 31} Under Ohio law, the trial court was required to instruct the jury on the lesser-included offense of reckless assault if the evidence, when construed in Metters' favor, was sufficient to support both a finding that Metters did not *knowingly* cause serious physical

harm to Sergeant Gillespie, *AND* a finding that Metters did *recklessly* cause serious physical harm to Sergeant Gillespie. " 'It is * * * a person's perception of the likelihood of the result that is the key in differentiating between [acting] "knowingly" and "recklessly." If the result is probable, the person acts "knowingly"; if it is not probable but only possible, the person acts "recklessly" if he chooses to ignore the risk.' " *State v. Easley*, 10th Dist. No. 99AP-703, 2000 Ohio App. LEXIS 2676, *9 (June 20, 2000), quoting *State v. Edwards*, 83 Ohio App.3d 357, 361 (10th Dist.1992).

{¶ 32} The question in this case is whether the trial court abused its discretion in concluding, after viewing the evidence in the light most favorable to Metters, that the record did not contain evidence on which the jury could acquit Metters of felonious assault and yet convict him of reckless assault. The question is not whether this court believes the testimony of the police witnesses more than Metters' testimony.

{¶ 33} The relevant facts are as follows: Metters broke the plexiglass in the home's front door, and despite that, a closed door still separated him from the police officers. Police officers maced Metters in the face through the window in the front door, leaving Metters "blinded, * * * coughing, and * * * vomiting," with a loss of equilibrium. (Sept. 15, 2021 Tr. at 116-17.) Metters maintained that, due to the macing, he did not see Sergeant Gillespie reach his hand through the broken window. Metters admitted he then swung the bat at the door to make the officers go away. Instead of hitting the door, the bat struck Sergeant Gillespie's hand as he reached into the home, causing injury to Sergeant Gillespie. Metters testified that he did not know that he had struck Sergeant Gillespie with the bat.

{¶ 34} If Metters was momentarily blinded as he claimed and, as a result, unaware Sergeant Gillespie's hand was through the window, it is difficult to conceive how he would have known that swinging the bat at the door would "probably" result in striking the police officers standing outside. In other words, the conclusion that Metters acted knowingly depends on the jury disbelieving critical portions of Metters' testimony. If the trial court had properly construed the evidence favorably to Metters, it would have found sufficient evidence to support an acquittal on the felonious assault charge.

{¶ 35} Moreover, the evidence shows that Detective Scurlock wrote in his report that Metters "aimlessly" swung the bat at Sergeant Gillespie. (Sept. 15, 2021 Tr. at 91.) He explained at trial, by use of the word "aimlessly," he meant to convey that he did not believe

that Metters "was aiming for anything particular on [Sergeant Gillespie's] body." (Tr. at 91.) Because it is the accused's perception of the likelihood of the result that is the key in differentiating between acting "knowingly" and "recklessly," and because Metters testified he was blinded by mace and did not see Sergeant Gillespie reach his hand inside the broken window, Detective Scurlock's testimony that Metters' swung the bat "aimlessly," arguably supports a finding that Metters acted without knowledge that a serious injury to Sergeant Gillespie was probable.

{¶ 36} We acknowledge Metters made statements to the investigating officers on the day of the incident that conflict with his trial testimony and may also be construed as inculpatory. We further acknowledge Metters' trial testimony contains arguably exculpatory details that he did not reveal to investigating officers. Metters' testimony also conflicts with the officers who testified at trial in several respects. Thus, Metters' credibility is clearly in question. However, in reviewing the evidence to determine whether a particular jury instruction is necessary, the trial court is required to construe the evidence in a light most favorable to the accused. It is for the jury, when properly instructed, to resolve any conflicts in the witness's testimony and to determine witness credibility. The jury was not properly instructed in this case because the evidence, when construed in Metters' favor, permits a reasonable trier of fact to conclude that Metters did not act knowingly.

{¶ 37} Further, the evidence would reasonably support a conviction on the lesser-included offense of reckless assault. Ohio law prohibits a person from "recklessly caus[ing] serious physical harm to another." R.C. 2903.13(B). "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). When construed in Metters' favor, the evidence establishes that after being blinded by mace, Metters swung a bat aimlessly at the door without knowledge that Sergeant Gillespie had reached his hand through the broken window. Aimlessly swinging a dangerous weapon in the direction of two police officers while temporarily blinded certainly displays a "heedless indifference to the consequences," even where such an action may not evince Metters' knowledge of a probable outcome. R.C. 2901.22(C). For that reason, the evidence would support a conviction for reckless assault.

{¶ 38} The trial court, in denying the requested instruction on reckless assault, expressed a concern that an instruction on the lesser-include offense would create a danger of a compromise verdict. On this record, however, we perceive no danger of a compromise verdict as Metters did not pursue an all-or-nothing defense to the charge at trial. *See Wine*, 2014-Ohio-3948, at ¶ 23 ("[A] compromise verdict could be more likely in cases in which the defendant presents an all-or-nothing defense.); *State v. Solomon*, 66 Ohio St.2d 214, 220 (1981) ("There is great potential for unreasonable compromises where the evidence adduced by a defendant constitutes a complete defense to the substantive elements of the crime charged.").

{¶ 39} Because the evidence, as construed "in the light most favorable to the defendant," reasonably supports both an acquittal on felonious assault and a conviction for reckless assault, the trial court was required to instruct the jury on the lesser-included offense of reckless assault. *Fox* at ¶ 21, citing *Anderson* at ¶ 39, and *Monroe* at ¶ 37. Failure to do so was error.

{¶ 40} "[T]his court uses the following three-part test to determine when failing to give a jury instruction constitutes reversible error: (1) the requested instruction must be a correct statement of the law; (2) the requested instruction must not be redundant of other instructions; and (3) the failure to give the requested instruction must have impaired the requesting party's theory of the case." *State v. McDowell*, 10th Dist. No. 10AP-509, 2011-Ohio-6815, ¶ 26, citing *State v. Dodson*, 10th Dist. No. 10AP-603, 2011-Ohio-1092, citing *Gower v. Conrad*, 146 Ohio App.3d 200, 203 (10th Dist.2001).

{¶ 41} There is no dispute the proposed instruction on reckless assault is a correct statement of the law, and no claim of redundancy. Furthermore, because the jury found Metters guilty of felonious assault where Metters' evidence could have convinced a reasonable jury that he acted recklessly rather than knowingly, the failure to give the requested instruction on the lesser-included offense of reckless assault necessarily impaired Metters' theory of the case. Thus, the trial court committed reversible error by failing to charge the jury on the lesser-included offense.

{¶ 42} For the foregoing reasons, we sustain appellant's first assignment of error.

**B. Second Assignment of Error**

{¶ 43} In his second assignment of error, Metters contends the trial court erred by denying his Crim.R. 29 motion for acquittal on the felonious assault charge as the state's evidence was insufficient to convict him of felonious assault. We disagree.

{¶ 44} As a preliminary matter, we note this assignment of error is not rendered moot by our reversal of appellant's convictions, as a determination of evidentiary insufficiency would bar a retrial of the felonious assault charge under the Double Jeopardy Clause. *State v. Thompkins*, 78 Ohio St.3d 380, 386-88 (1997). *See also State v. Brundage*, 1st Dist. No. C-030632, 2004-Ohio-6436, ¶ 28 and *State v. Ritze*, 154 Ohio App.3d 133, 2003-Ohio-4580, ¶ 12 (1st Dist.).

{¶ 45} Crim.R. 29(A) states: "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A motion under Crim.R. 29(A) thus challenges the sufficiency of the evidence. Sufficiency is a question of adequacy. *Thompkins* at 386. Whether evidence is legally sufficient to sustain a criminal conviction is a question of law that we review de novo. *State v. Dent*, 163 Ohio St.3d 390, 2020-Ohio-6670, ¶ 15, citing *Thompkins* at 386, and *In re J.V.*, 134 Ohio St.3d 1, 2012-Ohio-4961, ¶ 3. "When reviewing the sufficiency of evidence to support a criminal conviction, 'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Tibbetts*, 92 Ohio St.3d 146, 161-62 (2001), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 46} To obtain a conviction on a charge of felonious assault under R.C. 2903.11(A)(1), the state was required to prove beyond a reasonable doubt that Metters knowingly caused serious physical harm to another. The only disputed element of felonious assault in this case was the requisite mental state—whether Metters acted knowingly. As stated above, "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶ 47} Our review of the evidence in connection with Metters' first assignment of error is relevant to our determination of this assignment of error. Indeed, our review of the record shows the state's evidence, when viewed in a light most favorable to the prosecution, could have convinced a reasonable trier of fact that Metters knowingly caused serious physical harm to Sergeant Gillespie. Therefore, the evidence was sufficient to support his conviction for felonious assault under R.C. 2903.11(A). The fact that we have also concluded the evidence, when construed in Metters' favor, permits a reasonable inference that Metters acted recklessly, rather than knowingly, does not alter our sufficiency determination as to felonious assault. *See Brundage* at ¶ 28.

{¶ 48} Accordingly, we overrule Metters' second assignment of error.

### C. Third Assignment of Error

{¶ 49} In his third assignment of error, Metters argues his conviction for felonious assault is against the manifest weight of the evidence. Our ruling on Metters' first assignment of error reversing his convictions and remanding the case for a new trial renders this assignment of error moot, and we decline to address it. *See* App.R. 12(A)(1)(c); *Thompkins* at 386-88.

{¶ 50} Metters' third assignments of error is moot.

## IV. CONCLUSION

{¶ 51} Having sustained Metters' first assignment of error, overruled Metters' second assignment of error, and concluded Metters' third assignment of error is moot, we reverse the judgment of the Franklin County Court of Common Pleas and remand the matter for that court to vacate appellant's convictions and conduct a new trial.

*Judgment reversed;*
*case remanded.*

LELAND, J., concurs.
BOGGS, J., dissents.

BOGGS, J., dissenting.

{¶ 1} I respectfully dissent. Primarily, I disagree with the majority's resolution of defendant-appellant Grant Metters' first assignment of error, because in my view the trial court did not abuse its discretion in denying Metters' request for a jury instruction on the lesser-included offense of reckless assault. As a result of that determination, I must also

disagree with the majority's determination that Metters' manifest weight challenge to his felonious assault conviction in his third assignment of error is moot.

**{¶ 2}**    Metters was originally charged with felonious assault in the alternative, under both R.C. 2903.11(A)(1) and (2), but during trial, the trial court granted the state's motion to amend the indictment to charge felonious assault only under R.C. 2903.11(A)(1), which states, "[n]o person shall knowingly * * * [c]ause serious physical harm to another or to another's unborn."  Prior to trial, Metters had filed a motion requesting that the trial court give a jury instruction on negligent assault, as a lesser-included offense of felonious assault, but after the trial court allowed the amendment of the indictment, Metters amended his request to one for a lesser-included offense instruction on reckless assault.  R.C. 2903.13(B) sets out the offense of reckless assault as follows: "No person shall recklessly cause serious physical harm to another or to another's unborn."

**{¶ 3}**    As the majority aptly notes, the parties do not dispute that reckless assault is a lesser-included offense of felonious assault under R.C. 2903.11(A)(1), and the only distinguishing factor between the offenses is the heightened mental state required for felonious assault.  Felonious assault under R.C. 2903.11(A)(1) requires the offender to have acted knowingly, while reckless assault under R.C. 2903.13 requires the offender only to have acted recklessly.  *State v. Jackson*, 10th Dist. No. 94APA04-531, 1994 Ohio App. LEXIS 5504, *11 (Dec. 8, 1994).

**{¶ 4}**    "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature."  R.C. 2901.22(B).  "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature."  R.C. 2901.22(C).  " 'If the result is probable, the person acts 'knowingly'; if it is not probable, but only possible, the person acts 'recklessly' if he chooses to ignore the risk.' "  *In re Judicial Campaign Complaint Against Emrich*, 75 Ohio St.3d 1517, 1519 (1996), quoting *State v. Edwards*, 83 Ohio App.3d 357, 361 (10th Dist.1992).

**{¶ 5}**    A trial court need not instruct a jury on a lesser-included offense "every time 'some evidence' is presented to support the lesser offense." *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, ¶ 192, citing *State v. Shane*, 63 Ohio St.3d 630, 632 (1992).  Rather,

a defendant is entitled to a jury charge on a lesser-included offense only when "the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." *State v. Thomas*, 40 Ohio St.3d 213 (1988), paragraph two of the syllabus. In determining whether an instruction on a lesser-included offense is warranted, the trial court must consider all the evidence in the light most favorable to the defendant and, before issuing an instruction on a lesser-included offense, must "find 'sufficient evidence' to 'allow a jury to *reasonably* reject the greater offense and find the defendant guilty on a lesser included * * * offense.' " (Emphasis sic.) *Trimble* at ¶ 192, quoting *Shane* at 632-33. *See also State v. Noor*, 10th Dist. No. 13AP-165, 2014-Ohio-3397, ¶ 84.

{¶ 6} Whether to instruct a jury on a lesser-included offense lies within the trial court's discretion. *State v. Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, ¶ 1. An appellate court reviews a trial court's refusal to give a requested jury instruction, including an instruction on a lesser-included offense, for an abuse of discretion under the facts and circumstances of the case. *State v. Nicholson*, __ Ohio St.3d __, 2024-Ohio-604, ¶ 162, citing *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 240; *Noor* at ¶ 84, citing *State v. Parnell*, 10th Dist. No. 11AP-257, 2011-Ohio-6564, ¶ 21-27. A trial court abuses its discretion when it acts unreasonably, arbitrarily, or unconscionably. *State v. Beasley*, 152 Ohio St.3d 470, 2018-Ohio-16, ¶ 12, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 7} While remaining "specifically mindful" of that standard, the trial court reviewed the parties' multiple arguments for and against the request for a lesser-included offense instruction, all the evidence presented at trial, and the caselaw cited by the parties before denying Metters' request for an instruction on reckless assault. (Sept. 16, 2021 Tr. at 13, 20.) Based on its independent review of the record, the majority here reaches a conclusion contrary to that of the trial court, but the fact that we, as an appellate tribunal, might have reached a different conclusion had we been sitting in place of the trial court does not, by itself, justify reversal. *See State v. Elqatto*, 10th Dist. No. 11AP-914, 2012-Ohio-4303, ¶ 23 ("An abuse of discretion exists where a trial court has acted in an arbitrary, unreasonable, or unconscionable manner, not where the reviewing court might have reached a different result if reviewing the matter de novo."). Whether or not we would have

reached the same conclusion under a de novo review, the trial transcripts clearly demonstrate that the trial court's decision to deny Metters' request for a lesser-included offense instruction was not arbitrary, unreasonable, or unconscionable.

{¶ 8} Counsel initially presented arguments to the trial court regarding the appropriateness of a lesser-included offense instruction on September 13, 2021, prior to voir dire. From the outset, the thrust of Metters' argument was that the evidence would not show that Metters acted knowingly when he struck Sergeant Gillespie with the nail-studded bat, because Metters had just been hit in the face with mace. Two days later, counsel and the trial court again discussed, both on and off the record and in conjunction with the state's motion to amend the indictment, whether an instruction on a lesser-included offense was warranted. In both instances, the court took the matter under advisement until after hearing all the evidence.

{¶ 9} The trial court once again heard arguments regarding whether a lesser-included offense instruction was warranted after the conclusion of the evidence on September 16, 2021, prior to the parties' closing arguments. With all evidence having been presented, defense counsel reiterated his belief that a jury could reasonably find that Metters did not act knowingly, but did act recklessly, when he swung at and struck Sergeant Gillespie. The prosecutor disagreed and responded, "we're so beyond * * * heedless indifference to the consequences and disregarding a substantial unjustifiable risk. The facts simply don't * * * shrink down enough to fit that." (Sept. 16, 2021 Tr. at 12.)

{¶ 10} In response to the trial court's question regarding specific evidence that would support an acquittal on felonious assault and a conviction on reckless assault, defense counsel pointed to the fact that Metters had been maced prior to striking Sergeant Gillespie with the bat. He argued, "that's a key fact in terms of what [Metters] was able to perceive or not perceive." *Id.* at 15. In fact, defense counsel argued that Metters "*was not * * * able* to act knowingly because he could not have been aware that by moving the bat as he did after being maced, he would probably strike [Sergeant Gillespie] on the hand." (Emphasis added.) *Id.* As additional evidence to support his claim that the jury could reasonably conclude that Metters "was not knowingly trying to strike" Sergeant Gillespie, defense counsel pointed to Sergeant Gillespie's testimony that Metters swung the bat only

once and in an upward direction. *Id.* at 16. Finally, he stated, there is no evidence that Metters knew that Sergeant Gillespie had reached his hand through the broken door.

{¶ 11} In opposition to defense counsel's arguments, the prosecutor pointed to the uncontroverted evidence that being hit with mace does not inhibit a person's motor skills or mental functions. He also directed the court to Metters' own testimony about the admittedly purposeful and intentional actions Metters took immediately after striking Sergeant Gillespie, including dropping the bat, backing away from the door, and lying on the ground. Those intentional acts, moments after having been maced, the state argued, rebutted the argument of Metters' counsel that Metters could not have acted knowingly when he swung the bat at Sergeant Gillespie. Finally, the prosecutor argued that Metters having been maced did not change the surrounding circumstances or Metters' awareness of them, including his proximity to the officers, that he had removed the barrier between himself and the officers by kicking out the door's central plexiglass panel, and his stated intention to avoid arrest on his outstanding warrant.

{¶ 12} The majority points to Metters' testimony that he was blinded by the mace and did not see Sergeant Gillespie reach his hand through the broken door to conclude that there was sufficient evidence upon which the jury could have acquitted Metters on the offense of felonious assault. A defendant's own testimony that he did not act knowingly, however, is not enough to entitle him to a lesser-included offense instruction " 'if the evidence on the whole does not reasonably support an acquittal on the [charged] offense and a conviction on a lesser offense.' " *Noor* at ¶ 84, quoting *State v. Willis*, 8th Dist. No. 99735, 2014-Ohio-114, ¶ 51. *See also State v. Hubbard*, 10th Dist. No. 11AP-945, 2013-Ohio-2735, ¶ 41, citing *State v. Campbell*, 69 Ohio St.3d 38, 47, *State v. Shane*, 63 Ohio St.3d 630, 632-33 (1992), and *State v. Wright*, 4th Dist. No. 01CA2781, 2002 Ohio App. LEXIS 7274 (even though defendant's own testimony may constitute some evidence supporting a lesser offense, if the evidence on [the] whole does not reasonably support an acquittal on the charged offense and a conviction on the lesser offense, the court should not instruct on the lesser offense).

{¶ 13} The trial court did not act unreasonably in rejecting Metters' argument that he could not act knowingly, i.e., that because of the effects of the mace he "could not have been aware that by moving the bat as he did after being maced, he would probably strike"

Sergeant Gillespie. (Sept. 16, 2021 Tr. at 15.) The undisputed evidence was that, although exposure to mace affects people differently, it does not affect motor or mental functions. Officers Smith and Ford, and Sergeant Gillespie offered anecdotal testimony about their own experiences having been maced, and all three testified that they experienced no effects with respect to their motor skills or mental acuity. Officer Ford explained that peace officer trainees are required to perform specific activities after being sprayed with pepper spray, specifically to demonstrate that they retain control over their motions and actions. Finally, the warnings on the pepper-spray canister included no mention of any effects on motor skills or mental functions. On this point, even viewed most favorably to Metters, the evidence does not support defense counsel's argument that the mace impaired Metters' mental faculties to a degree that would have rendered him incapable of acting knowingly.

{¶ 14} Metters' own characterization of his actions immediately after striking Sergeant Gillespie provides additional evidence that the effects of the mace did not deprive him of the ability to act knowingly. After swinging the bat, Metters testified that he immediately thought, "[o]h shit," and intentionally dropped the bat. (Sept. 15, 2021 Tr. at 143.) Metters was also able to instantaneously and intentionally comply with the officers' command to get on the ground and to reason, "I knew I had messed up," seconds after being maced. *Id*. at 128. He testified, "That's why * * * as soon as they came in, I put my arms up to the side and laid flat when they required." *Id*. Metters' testimony does not support an inference that he was unable to appreciate that swinging the nail-studded bat toward the broken door would probably cause serious physical injury.

{¶ 15} Viewing the evidence in the light most favorable to Metters, the trial court could have reasonably concluded that the evidence, on the whole, did not reasonably support an acquittal on the charge of felonious assault. Contrary to the majority's assertion, it is not "difficult to conceive how [Metters] would have known that swinging the bat at the door would 'probably' result in striking" Sergeant Gillespie, even accepting that Metters was momentarily blinded by the mace and unaware that Sergeant Gillespie had reached his hand through the broken door. (Maj. Decision at ¶ 34.) The state was not required to prove that Metters intended to hit Sergeant Gillespie. Nor was it required to prove that Metters knew that he would probably strike Sergeant Gillespie on the hand. Metters acted knowingly if he knew that his action—swinging the nailed-studded bat toward where

Sergeant Gillespie, unobstructed by the kicked-out plexiglass panel of the broken door, was standing—would probably cause serious physical harm. Metters did not dispute that he knew his kick had broken out the door panel, which had been the only barrier between himself and the officers, and that Sergeant Gillespie was standing directly in front of the broken door, mere feet away.

{¶ 16} The majority's decision also notes Detective Scurlock's statement in his investigative report that Metters "aimlessly" swung the bat at Sergeant Gillespie, but that statement does not change the calculus regarding Metters' entitlement to an instruction on reckless assault. Detective Scurlock testified at trial and explained that, by his use of the word "aimlessly," he meant to convey that Metters swung the bat "at Sergeant Gillespie," but that he was not "aiming for anything in particular on [Sergeant Gillespie's] body." (Sept. 15, 2021 Tr. at 91.) Again, the prosecution was not required to prove that Metters was aiming for Sergeant Gillespie's hand, or even aiming for Sergeant Gillespie more generally, so long as Metters knew that serious physical harm would probably result from his actions. Detective Scurlock's statement does not make it any less likely that Metters had the requisite knowledge.

{¶ 17} Having heard arguments from counsel on multiple occasions regarding the appropriateness of a lesser-included offense instruction, having deferred ruling on Metters' request for such an instruction until after presentation of all the evidence, having reviewed the caselaw presented by the parties, and having correctly stated the applicable standard governing the giving of an instruction on a lesser-included offense, the trial court ultimately declined to instruct the jury on the lesser-included offense of reckless assault. In light of the surrounding circumstances here, swinging a nail-studded bat toward a person mere feet away—especially with the force we know Metters used—is probably going to cause serious physical injury. This is simply not a case in which the trial court's determination lacked a sound reasoning process. Thus, in my view, the trial court's decision was not arbitrary, unreasonable, or unconscionable, and I would overrule Metters' first assignment of error.

{¶ 18} Because my resolution of the first assignment of error would leave in place Metters' conviction for felonious assault, I must also disagree with the majority's determination that Metters' third assignment of error—challenging his felonious assault conviction on manifest weight grounds—is moot. I do, however, agree with the majority's

resolution of Metters' second assignment of error and its conclusion that the trial court did not err by denying Metters' Crim.R. 29 motion for acquittal on the charge of felonious assault.

{¶ 19} For these reasons, I dissent and would affirm the trial court's judgment.

_____