OPINION
{¶ 1} Defendant-appellant, Kevin D. McClelland ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas, entered upon a jury verdict finding appellant guilty of one count of felonious assault, a felony of the first degree, and one count of assault, a felony of the fourth degree. *Page 2 
 {¶ 2} This case began on February 9, 2006, when the Franklin County Grand Jury indicted appellant on one count of felonious assault, a felony of the first degree, and one count of assault, a felony of the fourth degree. Trial commenced on January 23, 2008, and on January 30, 2008, the jury found appellant guilty on both counts. The trial court immediately imposed a sentence of four years of incarceration on count one and a concurrent sentence of 18 months on count two. The trial court journalized appellant's conviction on February 1, 2008, and appellant filed a motion for delayed appeal on March 12, 2008, which we granted.
 {¶ 3} On appeal, appellant advances a single assignment of error for our review:
 THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING APPELLANT GUILTY OF FELONIOUS ASSAULT AS THAT VERDICT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WAS ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 4} "A conviction based on insufficient evidence constitutes a denial of due process." State v. Rawls, Franklin App. No. 03AP-41,2004-Ohio-836, ¶ 25, citing State v. Thompkins, 78 Ohio St.3d 380, 386,1997-Ohio-52, 678 N.E.2d 541. The Supreme Court of Ohio outlined the role of an appellate court presented with a sufficiency of evidence argument in State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant *Page 3 
inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
See, also, Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781,61 L.Ed.2d 560.
 {¶ 5} This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172, 175,20 OBR 215, 485 N.E.2d 717. Rather, the sufficiency of evidence test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."Jackson, supra, at 319. Accordingly, the weight given to the evidence and the credibility of witnesses are issues primarily for the trier of fact. State v. Thomas (1982), 70 Ohio St.2d 79, 80, 24 O.O.3d 150,434 N.E.2d 1356. The reviewing court does not substitute its judgment for that of the fact finder. Jenks, supra, at 279.
 {¶ 6} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins, supra, at 387. The appellate court, however, must bear in mind the trier of fact's superior, first-hand perspective in judging the demeanor and credibility of witnesses. See State v. DeHass (1967), 10 Ohio St.2d 230,39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. The power to reverse on "manifest weight" grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the conviction." Thompkins, supra, at 387. *Page 4 
 {¶ 7} We begin by recapitulating the facts adduced at trial. On August 26, 2005, at approximately 4:45 p.m., appellant boarded a Central Ohio Transit Authority ("COTA") bus at the intersection of Woodruff and High Streets in the University District of Columbus. Upon boarding the bus, appellant swiped a discount card and deposited the discount fare of 60 cents. However, the fare box indicated that appellant's discount card was invalid. The bus driver, Mia McBride ("McBride"), asked to see appellant's pass, whereupon he replied, "bitch, I already told you the pass isn't no good." (Tr. Vol. I, 59.) When McBride informed appellant that he was required to deposit an additional 10 cents, appellant replied that McBride either needed to refund his 60 cents or give him his desired transfer or, "if you don't, I am going to fuck you up." Id. at 61, 77. McBride testified, "he kept telling me he was going to kill me * * *." Id. at 75. However, the fare box did not allow her to refund appellant's money.
 {¶ 8} During this argument, McBride became concerned and pushed a "priority" button and requested assistance from COTA's radio room. McBride pulled the bus over, opened the doors and asked appellant to exit the bus. She informed him that she was calling the police, whereupon appellant walked to the back of the bus, took a seat, and stated, "I am not going anywhere. You can call the white pigs." Id. at 62. When McBride resumed talking to radio room personnel, appellant walked back toward the front of the bus and, according to McBride, told her to get out of her seat and that "he was going to fuck me up." Id. McBride hit a panic button, which activated a two-way walkie talkie feature that allowed the radio room personnel to hear what was happening on the bus. Appellant retook his seat at the back of the bus, again stating that he would wait until the "white pigs" arrived. Id. at 63. *Page 5 
 {¶ 9} McBride spotted Columbus Police Officer Komisarek patrolling the area, and she went outside and flagged him down. He accompanied her back to the bus and she pointed appellant out to him. Appellant was seated at the back of the bus, near the rear door and on an elevated platform from which several steps descended to the rear door area and aisle. Officer Komisarek asked appellant to leave the bus. The officer testified that appellant was verbally abusive in response, saying, "fuck off, you white devil." Id. at 124. McBride testified that appellant was confrontational and said that "he wanted his money back, and he was going to take it out of either my ass or the police officer's, but he wasn't going anywhere without his money." Id. at 67, 79.
 {¶ 10} The officer positioned himself on the steps leading up to the platform where appellant was located. Appellant then stood up and the officer asked him to sit down, whereupon appellant said "make me" and "I will fuck you up." Id. at 68, 79. According to Officer Komisarek, appellant then turned his body toward the officer in a fighting stance that is a "danger cue" indicating that a person is poised to attack. The officer then used a taser to attempt to subdue appellant. The officer testified that the tool he would normally have used in such a situation is pepper spray, but because the two were located in a confined space occupied by other bus riders, he chose to use the taser instead.
 {¶ 11} Appellant removed the taser barbs and "charged" the officer. Id. at 124-127. Appellant made contact with the officer, causing the officer to fall backward off of the steps. Officer Komisarek testified that appellant tackled him at the midsection, "pushed me back, kind of rotated me. At that point I felt an extreme amount of pain in my right leg." Id. at 127, 137-138. According to Officer Komisarek, appellant also bit the officer's left biceps muscle. The two continued to struggle, whereupon they both fell out of the *Page 6 
rear door of the bus. When McBride ran out of the bus, she saw the officer's upper body lying on the ground and his lower body still on the bus, with appellant on top of him. The struggle continued, with the officer eventually positioned on top of appellant. Appellant resisted the officer's efforts to handcuff him, but the officer was eventually able to handcuff him with the help of bystanders who came to the officer's aid. A backup police officer arrived as well. McBride noticed that the officer was holding his knee and moaning. When appellant saw McBride, he said, "bitch, it ain't over. I am going to kill you. I am going to get you later." Id. at 82.
 {¶ 12} Officer Komisarek suffered a dislocated patella in the melee. When paramedics arrived and asked him about his level of pain on a scale of one to ten, he stated that it was a 12. Hospital personnel needed to sedate him in order in put his kneecap back in place. He was unable to use his leg for several weeks and could not bend his knee for three months. He was unable to work until January 2006, after extensive physical therapy.
 {¶ 13} Appellant testified that he had a valid bus pass and that McBride was rude to him. He stated that Officer Komisarek was overly aggressive with him and used racial epithets toward him. He claimed that the officer used his taser without justification and he began wrestling with the officer for control of the taser. He stated that as the two struggled for control of the taser, they fell out of the bus accidentally.
 {¶ 14} Appellant claims that this evidence is insufficient to support his conviction for felonious assault. Appellant was charged with a violation of R.C. 2903.11(A)(1), which provides, "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * *." Appellant does not dispute that Officer Komisarek suffered serious physical harm, which *Page 7 
is defined as "[a]ny physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity; * * * [or] [a]ny physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5)(c) and (e).
 {¶ 15} However, appellant argues that the evidence was insufficient to demonstrate that he acted knowingly. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 16} Appellant argues that Officer Komisarek's knee injury was accidental, and that he was not aware that his conduct would probably result in the officer's injury. Citing State v. Elliott (1995),104 Ohio App.3d 812, 819, 663 N.E.2d 412, discretionary appeal not allowed,74 Ohio St.3d 1456, 656 N.E.2d 951, he argues that the knee injury was only possible, not probable and, therefore, he acted recklessly, but not knowingly. The Elliott court relied upon State v. Edwards (1992),83 Ohio App.3d 357, 361, 614 N.E.2d 1123, in which the court explained:
 A defendant acts knowingly when, although he may be indifferent to the result, he is nevertheless aware that the result may occur. A defendant acts recklessly according to R.C. 2901.22(C) when he is aware that there is a risk or chance that the prescribed result may occur, but he nevertheless chooses to engage in the act and runs the risk. It is therefore a person's perception of the likelihood of the result that is the key in differentiating between "knowingly" and "recklessly." If the result is probable, the person acts "knowingly"; if it is not probable but only possible, the person acts "recklessly" if he chooses to ignore the risk. *Page 8 
 {¶ 17} Plaintiff-appellee, State of Ohio ("the state"), argues that, even under the foregoing standard, the evidence is sufficient to establish that appellant acted knowingly because he was aware that the officer would probably suffer serious physical harm as a result of appellant's actions. The only direct evidence as to appellant's mental state is his testimony that he and Officer Komisarek tumbled out of the bus accidentally and the officer's injuries were the result of an accident. However, the jury was free to disbelieve this testimony.State v. Hill, Franklin App. No. 07AP-889, 2008-Ohio-4257, ¶ 44.
 {¶ 18} The state maintains that appellant's actions of lunging at the officer and wrestling with him, coupled with appellant's statements immediately prior to the physical altercation, constitute sufficient evidence that appellant acted knowingly in causing serious physical harm to Officer Komisarek. It is true that intent can be determined from the surrounding facts and circumstances. State v. Robinson (1954),161 Ohio St. 213, 53 O.O. 96, 118 N.E. 2d 517, paragraph five of the syllabus.
 {¶ 19} Appellant told the officer that he intended to "tak[e] it out" of Officer Komisarek's "ass" and was going to "fuck[] him up." These threats provide circumstantial evidence of appellant having acted at least knowingly; that is, with awareness that the officer would probably suffer serious physical harm. Moreover, as the state points out, "a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts." State v. Johnson (1978),56 Ohio St.2d 35, 39, 10 O.O.3d 78, 381 N.E.2d 637.
 {¶ 20} In addition, "[i]t is not necessary that the accused be in a position to foresee the precise consequence of his conduct; only that the consequence be foreseeable in the sense that what actually transpired was natural and logical in that it was within the scope *Page 9 
of the risk created by his conduct." State v. Losey (1985),23 Ohio App.3d 93, 96, 23 OBR 158, 491 N.E.2d 379. Thus, though appellant may not have foreseen the precise injury that Officer Komisarek suffered (a dislocated knee), because such an injury was within the scope of the risk created by a physical attack occurring at the top of steps next to the back door of a bus, appellant is presumed to have intended the injury. This is more than sufficient to prove the mental state required to convict appellant of felonious assault. In addition, upon our review of all of the evidence adduced at trial, it is our view that the jury did not lose its way and did not create a manifest miscarriage of justice justifying reversal of appellant's conviction for felonious assault.
 {¶ 21} For all of the foregoing reasons, we find appellant's conviction to be supported by sufficient evidence and not against the manifest weight of the evidence. Accordingly, appellant's single assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
 Judgment affirmed. PETREE and FRENCH, JJ., concur. *Page 1