[Cite as *State v. Lack*, 2021-Ohio-2956.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-200334 |
| | | TRIAL NO. C-20CRB-14187 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| DAVID LACK, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  August 27, 2021


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Ronald Springman*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Sarah E. Nelson*, Assistant Public Defender, for Defendant-Appellant.

**BOCK, Judge.**

{¶1} Defendant-appellant David Lack appeals his domestic-violence conviction, asserting that there was insufficient evidence to support his conviction and that his conviction was against the manifest weight of the evidence. For the following reasons, we affirm the trial court's judgment.

## I. Facts and Procedure

{¶2} In July 2020, defendant-appellant David Lack was arrested for domestic violence under R.C. 2919.25(A). Lack's girlfriend, Tamara Ott, was the alleged victim.

{¶3} The complaint alleged that during a party hosted by Lack and Ott at their home, Lack forced his way into a bathroom that Ott was occupying, grabbed her left wrist, struck her in the back of her arm, and forced her to stay in the bathroom for ten minutes, "causing her to fear for her life."

### A. Bench Trial

{¶4} At trial, Ott, her friend Lauren Riley, Deputy Adam Giver, and Deputy Kimberly Koehler testified for the state. Lack did not testify or provide any witnesses.

{¶5} Riley testified that she saw Lack pinning Ott against a kitchen wall and left the house. She testified that when she came back in the home minutes later, she heard Lack screaming and Ott saying from inside of a bathroom, "Let go of me. Let me out." Riley called 911.

{¶6} Deputies Adam Giver and Kimberly Koehler responded to the 911 call. The deputies' body-camera footage was played during trial.

### 1. Body-worn camera footage shows that Ott was distraught

{¶7} The footage showed Ott recounting the incident to the deputies shortly after it occurring. Ott was visibly upset and sobbing. She told the deputies that she was "scared to death" of Lack and wanted him out of the home.

{¶8} Ott explained that Lack had blocked her from leaving the bathroom. She told Deputy Giver that Lack had been "in her face" and had her bent backward over the bathroom counter. She told the deputies that Lack had grabbed her wrist and smacked her on the back of the arm, causing pain and redness.

{¶9} The footage shows that while explaining the incident to Deputy Koehler, Ott pointed to the areas of redness on her wrist and arm, where she alleged that Lack had grabbed her (wrist) and smacked her (arm). Deputy Koehler's body-camera footage showed her confirming that she had seen redness on Ott's wrist and the back of her arm.

### 2. Trial testimony confirmed body-worn camera footage

{¶10} Ott testified that the incident began when Lack confronted her and began yelling at her in the kitchen about a picture that she had taken with Riley. At some point, she left the kitchen and went into the bathroom. Lack began to bang on the bathroom door, demanding to be let in. Once Lack gained entry into the bathroom, he continued to yell at her and kept her in the bathroom about ten to 15 minutes.

{¶11} Ott further testified that while in the bathroom, Lack grabbed Ott's wrist and "squeezed real hard," causing pain and leaving marks. She stated that she kept telling Lack to get out of her face and let her out of the bathroom, but Lack was "standing there with his fists balled up." When she moved her arm, Lack "open hand

3

* * * smacked" the back of her arm. After she had gotten around Lack and exited the bathroom, he tried to block her as she walked down the hallway. Ott got around Lack and saw Deputy Giver. She explained what had happened to Giver and stated that she "was scared."

{¶12} Riley testified that she had been friends with Ott for ten years and had known Lack for the four years that Ott and Lack had been dating. She stated that, after she and Ott had taken a picture together, she walked in the kitchen to find Lack pinning Ott against the wall and screaming at her. When she came back into the home about five minutes later to help a child use the restroom, Riley heard Ott saying "Let go of me" and "Let me out" from within the bathroom. Riley then called 911. Riley testified that it took about six to seven minutes for law enforcement to arrive.

{¶13} Deputy Giver testified that he responded to the 911 call and spoke with Lack. Giver said that Lack was arrested 15 minutes later based on the information that Giver had obtained about the incident from his partner, Deputy Koehler, and Green Township officers, who had spoken with Ott. He stated that he did not observe any injuries on Ott, but that he had not been looking for any injuries on her.

{¶14} Deputy Koehler testified at trial that Ott had been "very distraught" upon their arrival and that she had observed redness on Ott's wrist and on the back of her arm.

{¶15} The trial court stated that while it did not think that Lack had intended to hit or physically harm Ott, it believed that Lack recklessly harmed her. The trial court then corrected itself, stating that Lack's conduct was purposeful, but in the heat of passion. The trial court found Lack guilty of domestic violence and sentenced him

4

to 180 days in jail with 180 days suspended, nine months of community control, and anger management classes. Further, the trial court ordered Lack to stay away from Ott.

**{¶16}** Lack now appeals.

## II. Assignments of Error

### A. Sufficiency of the Evidence

**{¶17}** Lack asserts in his first assignment of error that the trial court's judgment was based on insufficient evidence.

**{¶18}** The test for determining the sufficiency of the evidence is whether "after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *State v. MacDonald*, 1st Dist. Hamilton No. C-180310, 2019-Ohio-3595, ¶ 12, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). It is a question of law for the court to determine and this court is not to weigh the evidence unless, after viewing the evidence, it weighs heavily against conviction. *MacDonald* at ¶ 12.

**{¶19}** Lack was convicted of domestic violence under R.C. 2919.25(A), which provides, "No person shall knowingly cause or attempt to cause physical harm to a family or household member." The slightest injury is sufficient to prove physical harm. *State v. Daniels*, 2018-Ohio-1701, 111 N.E.3d 708, ¶ 35 (1st Dist.).

**{¶20}** "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "[A] defendant acts knowingly when, although not necessarily intending a particular result, he or she is aware that the

result will probably occur." *State v. Preston*, 8th Dist. Cuyahoga No. 109572, 2021-Ohio-2278, ¶ 36. People are presumed to understand the reasonable and probable consequences of their actions. *Id.*

**{¶21}** Lack contends that there was insufficient evidence to show that he knowingly caused Ott harm. Lack appears to concede that he "put his hands" on Ott. But he contends that he could not have known that he would cause Ott harm under R.C. 2919.25(A) because "[p]utting your hands on someone is not an act that will probably result in harm."

**{¶22}** The evidence was sufficient to support all of the necessary elements of R.C 2919.25(A): Lack knowingly squeezed Ott's wrist and hit the back of her arm. He is presumed to understand the reasonable and probable consequences of his actions. It is reasonable and probable to assume that when someone hits another person, the aggressor knows that the victim will suffer some harm.

**{¶23}** Lack's first assignment of error is overruled.

### B. Weight of the Evidence

**{¶24}** Lack's second assignment of error asserts that he is entitled to a new trial because his conviction was contrary to the manifest weight of the evidence.

**{¶25}** In reviewing a weight-of-the-evidence claim, this court must review "the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, ¶ 59, quoting *State v. Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).

{**¶26**} The weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. *Bailey* at ¶ 63. In reviewing a challenge to the weight of the evidence, this court sits as a "thirteenth juror." *State v. Curry*, 1st Dist. Hamilton No. C-180493, 2020-Ohio-1230, ¶ 17, quoting *Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541. However, this court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *Bailey* at ¶ 63.

{**¶27**} Lack asserts that the testimony was "incredible" because Ott's story changed about how Lack got into the bathroom, discrepancies existed between Ott's and Riley's stories, Ott was able to escape the bathroom, Ott and Riley have motivation to lie, and Ott recounted that Lack had hurt her only after deputies asked specific questions about whether Lack had harmed her.

{**¶28**} But Deputy Koehler testified that she saw redness on Ott's wrist and arm. Lack does not dispute that he "put his hands on" Ott. Thus, it is not patently apparent that the trial court lost its way in finding that Lack knowingly caused Ott physical harm.

{**¶29**} Lack's second assignment of error is overruled.

### III.    Conclusion

{**¶30**} The trial court's finding Lack guilty of domestic violence was supported by sufficient evidence. A reasonable person could have found that the state proved beyond a reasonable doubt that Lack knowingly caused Ott harm by smacking her arm and squeezing her wrist. Moreover, the trial court did not lose its way in finding Lack guilty of domestic violence. Lack's assignments of errors are overruled and we affirm the trial court's judgment.

Judgment affirmed.

**MYERS, P.J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion