[Cite as *State v. Rogers*, 2025-Ohio-2841.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 24AP-524 |
| | | (C.P.C. No. 22CR-0680) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Latoya T. Rogers, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on August 12, 2025

**On brief:** *Shayla D. Favor*, Prosecuting Attorney, and *Sheryl L. Prichard* for appellee.

**On brief:** *Brian J. Rigg* for appellant.

APPEAL from the Franklin County Court of Common Pleas

MENTEL, J.

{¶ 1} Plaintiff-appellant, Latoya T. Rogers, appeals a judgment of the Franklin County Court of Common Pleas that convicted and sentenced her for one count of felonious assault. For the following reasons, we affirm that judgment.

{¶ 2} On February 14, 2022, Rogers participated in a fight, during which she stabbed a woman in the heart. According to Rogers, the circumstances that provoked the fight began approximately two years earlier when her then 14-year-old son, Bryan, shot another teenager, Mal, in the arm.[1] Rogers contended that Mal's family developed a grudge

---

[1] Although we normally refer to witnesses by their initials, we refer to the witnesses in this case by abbreviations of their first names to avoid confusion. This case involves a large number of witnesses and multiple witnesses have the same initials.

against her family as a result of the shooting, and Mal's siblings started harassing her children.

{¶ 3} After serving one year in juvenile detention for shooting Mal, Bryan returned home. On February 14, 2022, Bryan attended his first day of school at Focus North High School. On that day, Bryan and Heaven got into a fight at school. Heaven is the best friend of Anna, Mal's younger sister. School administrators informed Bryan that, due to the conflict between him and Heaven, the Columbus City School District would transfer him to another high school.

{¶ 4} For Rogers, Bryan's fight with Heaven was the "last straw." (June 6, 2024 Tr. Vol. 4 at 488.) She decided to go to Mal's family home, an apartment on Hiawatha Street, and speak with his parents about stopping the ongoing harassment. Rogers and Bryan drove to the Hiawatha Street apartment in Rogers' vehicle. Rogers' daughter, NiNi, also headed to the same location in a second vehicle. NiNi had with her three friends, including Niyah. According to Niyah, NiNi recruited her to help fight the people who were "messing with [Bryan]." *Id.* at 436.

{¶ 5} After leaving school on February 14, 2022, Heaven walked toward the Hiawatha Street apartment to see her friend Anna. Heaven met Anna and Anna's younger brother, Dom, on Weldon Street, a short distance away from the apartment.[2] Heaven and Anna testified that, while they and Dom were walking back to the Hiawatha Street apartment, they encountered the vehicles driven by Rogers and NiNi.

{¶ 6} According to Heaven and Anna, Bryan exited his mother's vehicle and punched Heaven in the nose. Heaven, Anna, and Dom then ran to the Hiawatha Street apartment with the two vehicles following them.

{¶ 7} According to Niyah, only the vehicle NiNi was driving passed Heaven, Anna, and Dom as they walked to the Hiawatha Street apartment. Niyah testified, "When we saw them[,] we asked if they want[ed] to fight, [and] they sa[id] yes, come to the house." (Tr. Vol. 4 at 438.) NiNi then followed Heaven, Anna, and Dom to the Hiawatha Street apartment. Rogers claimed that, relying on the directions Bryan gave her, she and Bryan arrived at the Hiawatha Street apartment shortly after NiNi.

---

[2] On February 14, 2022, Heaven was 16 years old, Anna was 15 years old, and Dom was 13 years old.

{¶ 8} Rogers and NiNi parked their vehicles in the middle of the street in front of the Hiawatha Street apartment. A security camera attached to the apartment building recorded the altercation that followed. The video recording from that camera later became a joint exhibit at Rogers' trial.

{¶ 9} On the recording, Rogers' group exits their vehicles and stands in the street. Heaven, Anna, and Dom stand on the walkway extending between the sidewalk and the apartment building. The two groups begin exchanging words. According to Heaven and Anna, Rogers' group wanted Heaven, Anna, and Dom to fight them on the street. Heaven, Anna, and Dom refused to leave the walkway.

{¶ 10} About five minutes into the standoff, Sha—Heaven's older sister—arrives. Sha approaches Rogers, who is sitting in the front seat of her vehicle. At trial, Sha testified that she came to Hiawatha Street because Heaven had called her, "sound[ing] like she was in a panic" and seeking her help in dealing with the situation. (June 4, 2024 Tr. Vol. 2 at 209.) Heaven confirmed that she had called Sha and told her "these people are trying to jump me." *Id.* at 157. Sha said that, when she arrived at Hiawatha Street, she tried to talk to Rogers about the cause of dispute and how to resolve it. Rogers only replied that, "she [was] done with the bullying, she [was] sick of it." *Id.* at 214.

{¶ 11} On the video recording, although Sha appears to calm the situation momentarily, the arrival of Jay less than one minute later escalates tensions again. Dom, Anna's younger brother, had called Jay and asked for his help dealing with Rogers' group. Within seconds of Jay's arrival, Bryan and Jay begin fist fighting in the middle of Hiawatha Street. Other people—on both sides—join in.

{¶ 12} During the fight, Dom appears to kick Bryan as Bryan and Jay spar. Rogers then walks toward Dom, holding her arm straight out in front of her, with something in her hand pointed at Dom as he backpedals quickly away from her. Once satisfied Dom has desisted from joining the fight, Rogers goes back to monitoring Bryan and Jay tussle. When Rogers sees Dom return to where Bryan and Jay are fighting, she raises her hand toward him a second time and he again sprints away. Heaven, Anna, and Jay confirmed that Rogers was pointing a knife at Dom.

{¶ 13} Close to the end of the fight, Bryan and Jay wrestle on the ground as Rogers stands over them. Although the view is obscured by a tree, Rogers appears to bend over the

two boys and reach down to them. As Jay later explained, the fist fight ended at that point because Rogers "put[] the knife to my neck and [told] me to let go of her son." (June 5, 2024 Tr. Vol. 3 at 307.)

{¶ 14} At trial, Rogers denied that she pulled a knife on either Dom or Jay. She testified that she would not use a knife to threaten a child. According to Rogers, the video recording shows her pointing a phone, not a knife, at Dom.

{¶ 15} After this fist fight, the two groups separate and return to their earlier positions—Rogers' group on the street and Heaven's group on the walkway. Rogers retreats to the front seat of her vehicle to call 9-1-1. Later, at trial, Rogers testified that she called 9-1-1 because "it was so much going on, the kids were fighting, I couldn't stop them from fighting, I was scared, and I called to see if the cops [could] come." (Tr. Vol. 4 at 500.)

{¶ 16} On the 9-1-1 call, Rogers informed the operator that Dom had a "little gun" in his pocket. (Ex. D1.) Rogers then complained to the operator that "they" wanted her group to leave, but her group would not go without the return of the phone "they" had stolen from her daughter. *Id.* Approximately two minutes into the call, Rogers stopped speaking with the 9-1-1 operator and began yelling at the people around her. On the open line, Rogers shouted:

> Why the f*** you keep f****** with my kid? Why y'all keep f****** with us? Why do y'all keep f****** with us? My son can't even go to school because of you f****** people. . . . Someone needs to bring the cops up here before you guys get stabbed because I'm f****** getting tired. . . . Stop f****** with us. Stop f****** with us. . . . B****, I'll f****** kill you. . . . Get your hands off me.

*Id.*

{¶ 17} On the video recording, after an approximately four-minute lull in the confrontation, Jackie—Heaven and Sha's mother—arrives at Hiawatha Street. Rogers' 9-1-1 call appears to capture Rogers' contribution to the argument that then recommences. According to Heaven, Jackie asked Rogers, "[W]hat is going on? . . . Why did you, as a mother, bring a whole bunch of people here to fight my daughter?" (Tr. Vol. 2 at 160.) Jackie testified that Rogers "was yelling and screaming and I just told her, . . . shame on you. Look how you are acting." (Tr. Vol. 3 at 276.) At trial, Rogers maintained that she was yelling at Jackie that "she d[idn't] need to be [t]here. Like, this [was] not part of them

at all. Like, they ha[d] no connection at all, so . . . she could have took her kid and just left." (Tr. Vol. 4 at 505.)

{¶ 18} As shown on the video recording, during the argument, Bryan steals Sha's phone out of her back pocket. Bryan then runs and tosses the phone to another member of his group when Sha catches up to him. This game of keep-away transforms into a brawl between the two groups.

{¶ 19} Rogers appears to restrain Jackie from pursuing Sha's phone. Jackie then pushes and hits Rogers. As Jackie and Rogers fight, one of the boys approaches Rogers from behind, grabs her around her waist, and spins her around. Rogers loses her balance and falls to the ground on her back. As Rogers falls, she holds on to Jackie's left wrist with her right hand. Jackie, who stays on her feet, tries pulling away from Rogers. When Jackie cannot break Rogers' hold on her left wrist, she begins hitting Rogers with her right hand. Another person then knocks Jackie to the ground. Both Rogers and Jackie struggle to their knees. At this point, Rogers draws a folding knife and stabs Jackie at least six times.

{¶ 20} According to Rogers, she drew her knife because she "was really scared for her life." (Tr. Vol. 4 at 510.) Rogers testified that she was on the ground with Jackie on top of her. Rogers closed her eyes and stabbed at Jackie, "trying to get her off of me." *Id.* at 511.

{¶ 21} Sha saw Rogers making "jabbing" motions while fighting with Jackie. (Tr. Vol. 2 at 221.) Sha then saw Jackie bleeding and heard Jackie say, "[S]he stabbed me, she stabbed me." *Id.* at 220. Sha pushed Rogers away from Jackie and helped Jackie into the Hiawatha Street apartment. It quickly became apparent that Jackie was bleeding profusely. Jackie had suffered stab wounds to her arms, face, and chest.

{¶ 22} An ambulance transported Jackie to the hospital. There, physicians determined that one of the stab wounds had penetrated four to five inches into Jackie's chest and punctured the left ventricle of her heart. Jackie's heart stopped beating in the emergency room, but she was resuscitated. Jackie survived as a result of emergency heart surgery. In addition to heart surgery, Jackie underwent plastic surgery to treat the stab wounds to her face.

{¶ 23} The Columbus Division of Police detained Rogers the evening of February 14, 2022. A crime scene search unit ("CSSU") detective swabbed Rogers' hands for residual evidence. A CSSU detective also collected a swab of the blood found on the roadway in front

of the Hiawatha Street apartment. Finally, in a search of Rogers' vehicle, a CSSU detective found a red, white, and blue folding knife on the driver's seat. The CSSU detective swabbed the folding knife for residual evidence.

{¶ 24} The swabs taken from Rogers' left hand; the roadway in front of the Hiawatha Street apartment; and the red, white, and blue folding knife all tested positive for blood. Further forensic testing revealed that all three swabs contained DNA consistent with Jackie's DNA profile. Consequently, to a reasonable degree of probability, Jackie was a contributor to the DNA on each of the three swabs.

{¶ 25} On February 23, 2022, Rogers was indicted on (1) one count of attempted murder, in violation of R.C. 2923.02 and 2903.02, a felony of the first degree, and (2) one count of felonious assault, in violation of R.C. 2903.11, a felony of the second degree. Rogers pleaded not guilty.

{¶ 26} The parties presented the evidence set forth above during a four-day jury trial. During trial, Rogers argued to the jury that it should find her not guilty for two reasons: (1) she acted in self-defense, and (2) with regard to the offense of felonious assault, she did not knowingly cause physical injury to Jackie. Rogers conceded at trial that Jackie suffered serious physical harm as a result of the stabbing.

{¶ 27} At the conclusion of the state's case, Rogers made a Crim.R. 29 motion for acquittal on the grounds that the state failed to produce sufficient evidence to prove all the elements of the charges. The trial court denied the motion.

{¶ 28} Before the trial court instructed the jury, Rogers objected because the court did not intend to instruct the jury on the offense of reckless assault, as a lesser-included offense of felonious assault. Rogers' attorney argued that "the testimony of my client closing her eyes and flailing away with the knife would support a jury conclusion that the conduct was reckless rather than intentional[] or knowing[]." (June 7, 2024 Tr. Vol. 5 at 569.) The trial court, however, declined to instruct the jury on reckless assault.

{¶ 29} After deliberation, the jury found Rogers not guilty of attempted murder, as charged in the first count of the indictment, and not guilty of the lesser offense of aggravated assault. The jury found Rogers guilty of felonious assault, as charged in the second count of the indictment.

{¶ 30} At a July 23, 2024 hearing, the trial court sentenced Rogers to an indefinite prison sentence of 8 to 12 years. In a judgment entered July 24, 2024, the trial court convicted Rogers of felonious assault and imposed the 8- to 12-year prison sentence.

{¶ 31} Rogers now appeals the July 24, 2024 judgment, and she assigns the following errors:

> [1.]    The trial court erred when it denied Latoya T. Rogers['] [Crim.R.] 29 Motion for Acquittal.
>
> [2.]    The trial [court] erred by failing to provide a jury instruction for reckless assault as a lesser-included offense of felonious assault.
>
> [3.]    The verdict[] of guilt as to [the] count[] of [f]elonious [a]ssault [was] against the manifest weight of the evidence.

{¶ 32} In her first assignment of error, Rogers argues that the trial court erred in denying her Crim.R. 29 motion for acquittal because the evidence presented by the state was insufficient to convict her of felonious assault. We disagree.

{¶ 33} Pursuant to Crim.R. 29(A), a court "shall order the entry of a judgment of acquittal of one or more offenses . . . if the evidence is insufficient to sustain a conviction of such offense or offenses." A review of a decision on " '[a] motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence.' " *State v. Spaulding*, 2016-Ohio-8126, ¶ 164, quoting *State v. Tenace*, 2006-Ohio-2417, ¶ 37.

{¶ 34} In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two the syllabus, *superseded by state constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, fn. 4 (1997). "[A]n appellate court does not ask whether the evidence should be believed but, rather, whether the evidence, 'if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.' " *State v. Pountney*, 2018-Ohio-22, ¶ 19, quoting *Jenks* at paragraph two of the syllabus. In essence, sufficiency is a test of the adequacy of the evidence. *State v. Thompkins*, 1997-Ohio-52, ¶ 23.

{¶ 35} R.C. 2903.11, which sets forth the offense of felonious assault, provides in relevant part:

> (A) No person shall knowingly do either of the following:
>
>> (1) Cause serious physical harm to another or to another's unborn;
>>
>> (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

As used in R.C. 2903.11(A)(1), "serious physical harm" includes (1) "[a]ny physical harm that carries a substantial risk of death;" (2) "[a]ny physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;" (3) "[a]ny physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;" and (4) "[a]ny physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5)(b) through (e). As used in R.C. 2903.11(A)(2), "physical harm" means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). Furthermore, as used in R.C. 2903.11(A)(2), a "deadly weapon" is "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2903.11(E)(1); 2923.11(A).

{¶ 36} Rogers does not contest that the knife used in the attack on Jackie qualifies as a deadly weapon or that Jackie suffered both physical harm and serious physical harm in the knife attack. Instead, Rogers argues that no rational trier of fact could have found her guilty of felonious assault because (1) no witness could conclusively identify her as the person who stabbed Jackie, and (2) the evidence did not establish that she intended to stab Jackie in the heart. We reject both of these arguments.

{¶ 37} First, Rogers admitted that she stabbed Jackie. During her testimony, Rogers stated, "I didn't say I didn't do it. *I did do it*, but it was self-defense." (Emphasis added.) (Tr. Vol. 4 at 539.) Additionally, Rogers pointed out the segment of the video recording that showed her stabbing Jackie:

> Q. Okay. So[,] I stopped [the video recording] at 14:14. That was around [the] time that you are using the knife?

A. No, keep going.

Q. I will resume from 14:14.

(Video recording played.)

A. Right there.  Right there.

Q. Okay.  And I just stopped it at 14:16.  That is when you were using the knife?

A. Yes.

*Id.* at 526.  Based on Rogers' testimony, a rational trier of fact could find that Rogers was the person who stabbed Jackie.

{¶ 38} Second, Rogers' argument that the evidence is insufficient because she did not intend to injure Jackie betrays a misunderstanding of the mental state required to establish felonious assault.  To commit felonious assault, a person must knowingly cause serious physical harm to another, or knowingly cause or attempt to cause physical harm to another.  R.C. 2903.11(A)(1) and (2).  For purposes of R.C. 2903.11, "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature."  R.C. 2901.22(B).  To act "knowingly" is not the same as acting "purposely," or with a specific intent to cause a certain result.  *State v. Munoz*, 2013-Ohio-4987, ¶ 10 (10th Dist.); *State v. Sorrells-Johnson*, 2008-Ohio-3469, ¶ 18 (10th Dist.).  A person acts knowingly when, although he or she may not intend a particular result, the person is conscious that his or her conduct will probably cause the result.  *State v. Lack*, 2021-Ohio-2956, ¶ 20 (1st Dist.).  Thus, " '[f]elonious assault under R.C. 2903.11, combined with the definition of "knowingly" found in R.C. 2901.22(B), does not require that a defendant *intended* to cause "serious physical harm" [or "physical harm"], but rather, that the defendant acted with an awareness that the conduct probably would cause such harm.' "  (Emphasis in original.)  *State v. McCurdy*, 2013-Ohio-5710, ¶ 16 (10th Dist.), quoting *State v. Smith*, 2005-Ohio-1765, ¶ 28 (10th Dist.); *accord State v. Anderson*, 2006-Ohio-6152, ¶ 43 (10th Dist.) (in determining whether a defendant acting knowingly for purposes of felonious assault, it was "irrelevant that [the defendant] may not have intended to cause [the victim's] physical injuries"

because "[t]he mental element of knowledge does not require an inquiry into the purpose for an act, but . . . involves the question of whether an individual is aware that his or her conduct will probably cause a certain result or will probably be of a certain nature").

{¶ 39} Here, Rogers argues that the evidence demonstrates that she used the knife intending to defend herself and deter others from attacking her. Because she did not intend to harm Jackie, she contends that the evidence against her is insufficient to prove felonious assault. Rogers' argument fails because it focuses on her intent rather than her knowledge. Rogers' culpability for felonious assault did not hinge on whether she intended to harm Jackie. It, instead, turned on whether Rogers was aware that stabbing Jackie multiple times in the chest, arms, and face would probably cause physical harm or serious physical harm to Jackie.

{¶ 40} Absent an admission by the defendant, a trier of fact can determine the defendant's mental state from the surrounding facts and circumstances, including the doing of the act itself. *State v. Williams*, 2025-Ohio-1794, ¶ 16 (10th Dist.); *Munoz* at ¶ 10. In deciding whether a defendant acted knowingly, a trier of fact considers common sense, causal probabilities. *State v. Cutright*, 2021-Ohio-4039, ¶ 35 (4th Dist.). " '[I]f a given result is probable, a person will be held to have acted knowingly to achieve it because one is charged by the law with knowledge of the reasonable and probable consequences of his own acts.' " *Sorrells-Johnson* at ¶ 18, quoting *State v. Dixon*, 2004-Ohio-2406, ¶ 16 (8th Dist.); *accord State v. Piercefield*, 2023-Ohio-1781, ¶ 36 (12th Dist.) (holding the same); *Cutright* at ¶ 35 (holding the same); *Lack* at ¶ 20 ("People are presumed to understand the reasonable and probable consequences of their actions.").

{¶ 41} Stabbing someone, especially in the area of vital organs and/or arteries, will probably result in serious physical harm or physical harm with a deadly weapon. *State v. Johnson*, 2007-Ohio-5783, ¶ 50 (11th Dist.). During the fight with Jackie, Rogers stabbed Jackie at least six times, at close range, wounding Jackie most seriously in her chest and face. Given nature of the attack and the location of Jackie's wounds, a rational trier of fact could find that Rogers was aware that stabbing Jackie would probably result in serious physical harm or physical harm with a deadly weapon. *See State v. Walker*, 2025-Ohio-1070, ¶ 34 (10th Dist.) ("When an individual, armed with a knife, engages in a struggle with another person, that individual is aware that their behavior will probably cause injuries to

the other person."); *State v. Brane*, 1998 Ohio App. LEXIS 5648, *8 (10th Dist. Dec. 3, 1998) ("In . . . close quarters with a struggling individual, [the defendant] brought out a knife and repeatedly hit [the victim's] chest area with the knife. Regardless of [the defendant's] actual purpose in bringing out the knife and hitting [the victim] with it, [the defendant] had to have known that the probable result of doing so would be physical harm to [the victim]."). The evidence, therefore, was sufficient to prove that Rogers knowingly caused Jackie serious physical harm or physical harm with a deadly weapon.

{¶ 42} Because we find both arguments Rogers makes in her first assignment of error unavailing, we conclude that the trial court did not err in denying Rogers' motion for acquittal under Crim.R. 29. Accordingly, we overrule Rogers' first assignment of error.

{¶ 43} By her second assignment of error, Rogers argues that the trial court erred in refusing to instruct the jury regarding reckless assault as a lesser-included offense of felonious assault. We disagree.

{¶ 44} A trial court conducts a two-step analysis when determining whether to instruct a jury on a particular offense as a lesser-included offense. *State v. Deandra*, 2013-Ohio-1722, ¶ 6. In the first tier, called the "statutory-elements step," the trial court asks the purely legal question of whether the offense at issue constitutes a lesser-included offense of the charged offense. *Id.* Appellate courts review legal questions using the de novo standard of review. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 38.

{¶ 45} The second tier requires the trial court to consider the evidence adduced to determine whether " ' "a jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser[-]included offense." ' " *Deandra* at ¶ 6, quoting *State v. Evans*, 2009-Ohio-2974, ¶ 13, quoting *Shaker Hts. v. Mosely*, 2007-Ohio-2072, ¶ 11. Notably, the lesser-included offense instruction is not warranted if there is only " 'some evidence' " to support a conviction of the lesser offense. *State v. Trimble*, 2009-Ohio-2961, ¶ 192, quoting *State v. Shane*, 63 Ohio St.3d 630, 632 (1992). Instead, "there must be sufficient evidence to permit the jury to reasonably reject the greater offense and find the defendant guilty on the lesser . . . offense." *State v. Nicholson*, 2024-Ohio-604, ¶ 162. When deciding whether to instruct the jury on a lesser-included offense, the trial court must view the evidence in the light most favorable to the defendant. *Id.* An

appellate court reviews a trial court's refusal to give the requested jury instruction for an abuse of discretion. *Id.*

{¶ 46} In this case, Rogers requested a jury instruction on an offense—reckless assault—that is a lesser-included offense of a charged offense—felonious assault. Reckless assault, as defined in R.C. 2903.13(B), prohibits any person from "recklessly caus[ing] serious physical harm to another or to another's unborn." As we stated above, felonious assault, as defined in R.C. 2903.11(A)(1), prohibits any person from "knowingly . . . [c]aus[ing] serious physical harm to another or to another's unborn." Thus, reckless assault is a lesser-included offense of felonious assault because " 'reckless assault carries a lesser penalty than felonious assault, . . . felonious assault cannot be committed without also committing reckless assault, and the only factor distinguishing the two offenses is the greater mental state required for felonious assault.' " *State v. Metters*, 2024-Ohio-1338, ¶ 28 (10th Dist.), quoting *State v. Jackson*, 1994 Ohio App. LEXIS 5504, *10 (10th Dist. Dec. 8, 1994). *See also State v. Miree*, 2022-Ohio-3664, ¶ 52 (8th Dist.) (holding that reckless assault is a lesser-included offense of felonious assault); *State v. Tolle*, 2015-Ohio-1414, ¶ 10 (12th Dist.) (holding the same).

{¶ 47} Felonious assault requires that an offender act "knowingly." R.C. 2903.11(A). Reckless assault, on the other hand, requires that an offender act "recklessly." R.C. 2903.13(B). As we stated above, "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

{¶ 48} The distinguishing factor between knowing and reckless conduct is the likelihood the conduct will cause a certain result or be of a certain nature. *Metters* at ¶ 31; *State v. Stevens*, 2020-Ohio-6981, ¶ 26 (6th Dist.). " 'Something is "probable" when there is more reason for expectation or belief than not, whereas something is "likely" when there is merely good reason for expectation or belief.' " *Stevens* at ¶ 26, quoting 1973 Technical Committee Comment to Am.Sub.H.B. 511. If a person proceeds despite awareness of the

*probable* result, the person acts knowingly; if a person ignores a *possible* result, the person acts recklessly. *Metters* at ¶ 31; *State v. McClelland*, 2008-Ohio-6305, ¶ 16 (10th Dist.).

{¶ 49} Rogers compares her case to the circumstances in *Metters*. There, the police sought to arrest the defendant, but the defendant refused to open his front door or exit his residence. *Id*. at ¶ 8. While standing in his foyer, the defendant kicked his closed front door, shattering the door's central plexiglass panel. *Id*. at ¶ 9. One officer deployed pepper spray through the shattered panel toward the defendant's face. *Id*. at ¶ 10. The officer then began pulling out fragmented pieces of plexiglass hanging in the door panel. *Id*. As the officer did this, the defendant swung a baseball bat he had modified by adding spikes made of nails and screws toward the door. *Id*. at ¶ 11. The baseball bat hit the officer in the hand, shattering a bone and puncturing through a finger. *Id*. at ¶ 11, 13.

{¶ 50} The defendant was indicted and tried on one count of felonious assault against a police officer. *Id*. at ¶ 1. Prior to jury deliberations, the defendant requested an instruction on the lesser-included offense of reckless assault, which the trial court denied. *Id*. at ¶ 22. On appeal, the defendant argued that the trial court erred by refusing to give the requested instruction. *Id*. at ¶ 26. We agreed. *Id*.

{¶ 51} We determined that the trial court was required to instruct the jury on the lesser-included offense of reckless assault if the evidence, when construed in the defendant's favor, was sufficient to support a finding that the defendant did not knowingly cause the officer serious physical harm, but instead, recklessly caused the officer serious physical harm. *Id*. at ¶ 31. The defendant testified that, due to the pepper spray blinding him, he did not see that the officer was pulling the broken shards out of the door panel when he swung the bat. *Id*. at ¶ 33. If the jury believed this testimony, then the jury could not find that the defendant would have known that swinging the bat at the door would probably result in striking the officer's hand. *Id*. at ¶ 34. However, the jury could find that by "[a]imlessly swinging a dangerous weapon in the direction" of the officers, the defendant displayed a heedless indifference to causing the officers possible serious physical injury. *Id*. at ¶ 37. Because, when construing the evidence in the defendant's favor, the jury could reasonably find the defendant acted recklessly instead of knowingly, we concluded that the trial court erred in not instructing the jury on reckless assault. *Id*. at ¶ 39.

{¶ 52} Rogers contends that her actions are like the defendant's actions in *Metters*. According to Rogers, she "testified that she closed her eyes and flailed with the knife, which suggests a lack of intentional targeting or clear awareness of the consequences of her actions." (Appellant's Brief at 14.) But Rogers does not accurately describe her testimony. Although Rogers stated that she closed her eyes before stabbing Jackie, she did not say that she "flailed" with the knife. In Rogers' retelling of the stabbing, Jackie was "on top of [her], so [Rogers] was trying to get [Jackie] off of [her]." (Tr. Vol. 4 at 511.) Rogers described holding the knife in her right hand, her right arm "going up toward" Jackie, and stabbing "the front" of Jackie's body. *Id.*

{¶ 53} When we construe the evidence in a light most favorable to Rogers, we cannot conclude, like we did in *Metters*, that a reasonable juror could find that the defendant aimlessly wielded a dangerous weapon heedless that it might possibly strike and injure another. Rogers knew that Jackie was in extremely close proximity to her when she stabbed Jackie at least six times. Given these circumstances, a reasonable juror would conclude that Rogers had to be aware that serious physical harm to Jackie was more than possible; it was probable.

{¶ 54} Consequently, a reasonable jury could find Rogers knowingly caused Jackie serious physical harm, but not that Rogers recklessly caused Jackie serious physical harm. The trial court, therefore, did not abuse its discretion in refusing to instruct the jury on the lesser-included offense of reckless assault. Accordingly, we overrule Rogers' second assignment of error.

{¶ 55} By her third assignment of error, Rogers argues that her conviction for felonious assault is against the manifest weight of the evidence. We disagree.

{¶ 56} When an appellate court reviews whether a conviction is against the manifest weight of the evidence, " '[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving the conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins*, 1997-Ohio-52, at ¶ 25, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). "Sitting as the 'thirteenth juror,' the court of appeals considers whether the evidence should be believed and may overturn a verdict if it disagrees with the

trier of fact's conclusion." *State v. Jordan*, 2023-Ohio-3800, ¶ 17. However, the appellate court's authority to reverse on manifest-weight grounds " 'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at ¶ 25, quoting *Martin* at 175.

{¶ 57} Rogers argues only that "due to the insufficiency of the evidence[,] a guilty verdict is against the manifest weight of the evidence." (Appellant's Brief at 16.) We have considered and rejected Rogers' arguments that the evidence was insufficient to convict her of felonious assault. After reviewing the entirety of the record, we conclude that the jury did not lose its way and create a manifest miscarriage of justice in convicting Rogers of felonious assault. Accordingly, we overrule Rogers' third assignment of error.

{¶ 58} For the foregoing reasons, we overrule Rogers' three assignments of error, and we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and BOGGS, JJ., concur.

————————————